■ THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v MANUEL RODRIGUEZ, Respondent. [596 NYS2d 824] —Order, Supreme Court, New York County (Alfred H. Kleiman, J.), entered June 24, 1988, which granted defendant's motion pursuant to CPL 330.30 (3) to set aside the verdict on the basis of newly discovered evidence, and directed a new trial, unanimously reversed, on the law, and the motion is denied.

The People's appeal from the order of the same court entered February 2, 1990, which dismissed the indictment, is *sua sponte* consolidated with the foregoing appeal and such order is reversed, on the law, the indictment reinstated and, in light of the reversal and denial of defendant's motion to set

aside the verdict, the matter is remanded for sentencing. Defendant is directed to surrender.

On May 2, 1988, defendant was found guilty by a jury of the criminal sale of a controlled substance in the third degree, in that, together with others, he sold two vials of crack cocaine to an undercover police officer.

The trial testimony established that, at approximately 5:00 P.M., on November 18, 1987, at a housing project at 868 Amsterdam Avenue, an undercover police officer approached one Keith Wilson and asked for crack. Wilson took the officer to a woman, not subsequently identified or apprehended, who in turn brought the officer to defendant, an admitted policy-maker. The undercover officer testified that the woman told the defendant that the officer wanted two vials, whereupon defendant took two vials from his pocket and handed them to the officer. After some dickering between the officer and the woman as to price, during which defendant said nothing, the officer agreed to the price and handed $20 of prerecorded buy money to defendant. The officer then began to walk away and the woman followed him asking, in effect, for a tip in the form of some crack. The officer refused and returned to his backup team. Based upon information received from the undercover officer, defendant was arrested shortly thereafter as he stood in front of a bodega across the street from the scene of the drug transaction. Sixty-nine policy slips and $60 in cash, but no buy money or narcotics, were found on him.

On May 24, 1988, the date set for sentencing, defendant moved to set aside the conviction on the ground of newly discovered evidence. In support of his motion, defendant submitted an affidavit from Wendy Judge, who purported to be defendant's unidentified accomplice and who claimed that defendant was innocent of the charges.

At the hearing on the motion, defendant testified that he did not know the woman's name or where she lived and that after he was arrested, he looked for her on 103rd Street, where he lived and where he had seen her previously, and on 104th Street; that he asked Keith Wilson about her; and, "kept on asking until I found her" approximately two to three weeks after the jury verdict. In the approximately six months prior to trial, defendant testified that he looked for her "on the street", "sometimes", "[e]very time I had some free time". According to defendant, he first saw the woman on 103rd Street between Broadway and Amsterdam Avenue. He then started talking to her and told her of his arrest and she said

that she would come to court because she was the one who had gotten him into trouble. Defendant then telephoned his attorney and the next day brought the purported witness to meet with him. On cross-examination, defendant admitted that he didn't look for the woman every day, but would go out for a few hours, and that he had seen Keith Wilson approximately a month after his arrest, but did not speak to him because he (defendant) was going to run an errand and did not notify his attorney that he had seen Wilson. He also admitted that Wendy Judge lived in the building next door to his, although the entrance to her building was around the corner on Amsterdam Avenue.

Ms. Judge testified that she was the unidentified and unapprehended accomplice. She stated that she sold the two vials to the undercover officer and that she made it appear that defendant was involved by asking him for a dollar and then "play[ing] like" she obtained the vials from defendant, whom she referred to as "Shorty". On cross-examination, she asserted that this one instance was the only time she sold narcotics; that she lived around the corner from defendant and had come to know him through a mutual acquaintance; and, that she had seen defendant ten to fifteen times during the months of February, March and April, 1988. Upon further inquiry by the court and after giving conflicting testimony, the witness eventually reversed herself and asserted that she had not seen defendant during the months preceding defendant's trial, but had seen him numerous times since.

At the conclusion of the hearing, the court granted defendant's motion, finding that Ms. Judge's testimony, which, it found, was discovered after defendant's trial, was not so incredible, as a matter of law, as to warrant denial of defendant's motion. The People then appealed the court's decision and, thereafter, on February 2, 1990, inasmuch as the People had failed to retry defendant during the pendency of their appeal, the court, *sua sponte,* dismissed the indictment. The People appealed that decision and, upon their motion, the original record on appeal was enlarged to include the February 2, 1990 record of proceedings.

It is well settled that on a motion for a new trial based upon newly discovered evidence the movant must establish, among other things, that "the newly discovered evidence must be such as to probably, not merely possibly, change the result if a retrial is had, and also must not have been discoverable before trial by the exercise of due diligence *(see, People v Priori,* 164

NY 459, 472)." *(People v Penoyer,* 135 AD2d 42, 44, *affd* 72 NY2d 936 *for reasons stated by Yesawich Jr., J., below.)*

As to whether the evidence would probably change the result if a retrial were had, it is clear that the veracity of the purported eyewitness and the probability of her account are relevant and these factors may be considered on a motion for retrial *(supra).*

Clearly, the account given by Ms. Judge was improbable on its face and was rendered even more incredible by her vacillating and contradictory testimony. She suggested that she and defendant were acquaintances, yet provided no motive for allegedly "framing" him. Indeed, the tale told by the witness —that she "play[ed] like" the vials came from defendant—is incredible on its face, not only because it is highly improbable that the undercover officer could have been misled by such conduct, but also because there is no plausible reason why Ms. Judge would have engaged in such a charade rather than simply consummating the sale.

On the issue of the discoverability of such evidence, it appears from the testimony that the defendant and Ms. Judge knew each other from the neighborhood, lived in close proximity to each other and had mutual acquaintances. Given these facts, defendant failed to establish the requisite due diligence by merely looking about the streets in his spare time. "The fact that the defense did not discover the eyewitness sooner does not necessarily warrant the conclusion that he could not have been discovered earlier." *(People v Latella,* 112 AD2d 321, 323, *lv denied* 66 NY2d 616.) No diligent effort was made to canvass the neighborhood, hire investigators or interview known acquaintances concerning Ms. Judge's whereabouts. In this regard, her recanted testimony that she had seen defendant prior to trial has not been credited. Based upon the foregoing, defendant's motion to set aside his conviction should have been denied.

Finally, it was error for the court to *sua sponte* dismiss the indictment, implicitly on speedy trial grounds, inasmuch as defendant never sought such relief. Such a motion "must be made in writing and upon reasonable notice to the People (CPL 210.45, subd 1). Failure to follow the statutory procedure results in a waiver of the claim [citations omitted]." *(People v Lawrence,* 64 NY2d 200, 203.) Concur—Sullivan, J. P., Wallach, Kupferman and Kassal, JJ.