OPINION OF THE COURT
 

 Smith, J.
 

 The issue in both of these cases is whether the
 
 Batson (Batson v Kentucky, 476
 
 US 79 [1986]) challenges were appropriately preserved. Because they were not, we affirm the orders of the Appellate Division upholding defendants’ convictions.
 

 People v James
 

 On October 24, 1996, an off duty corrections officer observed defendant attempting to break into the officer’s car. Following a confrontation, the officer held the defendant at gunpoint until police arrived.
 

 Defendant was indicted for attempted criminal possession of a weapon in the second degree. The defense sought to persuade the jury that defendant suffered from a mental defect precluding him from forming the requisite intent. During jury selection, he raised a
 
 Batson
 
 challenge, arguing that the People’s
 
 *267
 
 challenge of five of six African-American women was an equal protection violation. In seeking to make out a prima facie case, the defense attorney named four African-American women the prosecutor had previously struck from the panel. The defense then focused on the fifth woman, Bemejam, a social worker and substance abuse counselor, who had been peremptorily challenged, stating:
 

 “Judge, at this time I am making a Batson challenge on behalf of my client. This is now — Mr. Jaffe [the prosecutor] kicked off Miss Nicholas who is a Black female. Miss Freeman [sic] on the last round was a Black female. Alice Newton is a Black female. Jacqueline Accoo is a Black female and now Miss Benejam [sic], and I am asking him to give a reason why he is kicking her off. She said she could be fair. She has no problems. She doesn’t have any family in law enforcement. She didn’t say much at all.”
 

 In response to this challenge, the prosecutor indicated he did not want social workers or nurses on the jury.
 
 [1]
 
 After hearing the People’s explanation, the court ruled that there was no
 
 *268
 

 Batson
 
 violation. With no further word or objection by the defendant, jury selection continued.
 

 Defendant was convicted of attempted criminal possession of a weapon in the second degree and sentenced to a determinate prison term of six years. On appeal he argued that his equal protection and due process rights were violated by the prosecutor’s peremptory challenges and the trial court’s disposition. The Appellate Division affirmed with two Justices dissenting. The majority held that the defendant’s
 
 Batson
 
 challenge was to one juror only — Bemejam, not as to all jurors as the dissenters contended. One of the dissenting Justices granted leave to appeal. We affirm.
 

 People v Jones
 

 On March 9, 1997, defendant Anthony Jones and two other men robbed an individual outside a Manhattan grocery store using a razor. Two weeks later defendant attempted to rob another individual outside the same store. Three store employees chased defendant until the police apprehended him.
 

 Defendant was indicted for one count of robbery in the first degree and one count of robbery in the second degree based on the March 9 incident, and one count of attempted robbery in the third degree based on the March 27 incident.
 

 During jury selection, defendant raised a
 
 Batson
 
 challenge, arguing that the People struck an African-American female during the first round of jury selection and two African-American males during the fourth round.
 

 In seeking to make out a prima facie case, the defense stated:
 

 “Your Honor, I’ll exercise a Batson at this point. Your Honor, let me make the record that on the first panel, your Honor, Mr. Snyder [prosecutor] excluded juror number ten, Francis Tuckedt, a black woman; Wilson Nau, a black man was excused [for cause by the court]. Then in the second panel, a black man, Pierre Noel the People exercised a peremptory. Now another black man, Caviness, People exercise peremptory. At this point I think it’s the prosecutor’s burden to show that this isn’t race based.”
 

 The prosecutor explained his reasons for challenging each juror. As to Caviness, the prosecutor stated that he overheard him making comments during the defense’s voir dire, that when he struck Tuckedt, he kept another black woman, and
 
 *269
 
 finally that Noel expressed problems with the police in the past.
 
 [2]
 

 The court rejected the
 
 Batson
 
 challenge, stating it “accepts there are non race based reasons for the exercise of peremptories by the People.” Thereafter, the defendant made no further objection concerning jury selection.
 

 Defendant was convicted of robbery in the first degree, robbery in the second degree and attempted robbery in the third degree and was sentenced accordingly. On appeal, the Appellate Division rejected defendant’s contention that the trial court had improperly failed to mention Tuckedt as part of the
 
 Batson
 
 challenge, and held that the challenge pertained only to the two male jurors in the fourth round. In aifirming the conviction, the Court stated:
 

 “It is, however, clear from the record that no claim as to her was made when she was peremptorily challenged nor during the remainder of questioning in the first pool. Not until questioning the fourth pool of prospective jurors and defendant’s objection to the prosecutor’s use of a peremptory against Caviness was F.T. mentioned and then only as part of a pattern which, upon closer examination, did not exist. At no time did defendant state that F.T.’s
 
 *270
 
 removal from the panel was itself discriminatory. An unarticulated claim is an unpreserved claim.” (284 AD2d 46, 49-50 [2001].)
 

 A Judge of this Court granted leave to appeal, and we now affirm.
 

 Discussion
 

 In making a
 
 Batson
 
 challenge, the moving party has the initial burden of establishing that the other side is using peremptory strikes to remove a cognizable racial
 
 [3]
 
 group and that facts and other relevant circumstances support a finding that the use of these peremptory challenges excludes potential jurors because of their race
 
 (Batson v Kentucky,
 
 476 US at 96;
 
 People v Childress,
 
 81 NY2d 263, 266 [1993]). “There are no fixed rules for determining what evidence will * * * establish a prima facie case of discrimination”
 
 (People v Bolling,
 
 79 NY2d 317, 323-324 [1992]). “[A] party asserting a claim under
 
 Batson
 
 * * * should articulate and develop all of the grounds supporting the claim, both factual and legal, during the colloquy in which the objection is raised and discussed”
 
 (Childress
 
 at 268 [citation omitted]). Proof sufficient to make a prima facie showing shifts the burden of going forward to the other party, but “ ‘the ultimate burden of persuasion’ must be carried by the person alleging the intentional discrimination * * *”
 
 (People v Hernandez,
 
 75 NY2d 350, 355 [1990] [citation omitted]).
 

 In the second step, after the moving party has established a prima facie case, the nonmoving party must give a race neutral reason for each and every person challenged in step one. If a defendant does not specifically question a particular strike, the prosecutor is not required to provide an explanation for it
 
 (see People v Manigo, 165
 
 AD2d 660, 662 [1st Dept 1990]). “Although the * * * race neutral [ ] reason for exercising a peremptory challenge need not rise to the level of a challenge for cause * * *, it must be legitimate and not merely a pretext for discrimination * * *”
 
 (People v Allen,
 
 86 NY2d 101, 106 [1995] [citations and internal quotation marks omitted]). Once the prosecutor gives race neutral reasons for peremptory challenges, the issue of whether a prima facie case has been made is moot
 
 (Hernandez v New York,
 
 500 US 352, 359 [1991]).
 

 
 *271
 
 In step three, the moving party may contend that the race neutral reasons given are pretextual. “When defendant challenges as pretextual the People’s explanation as to a particular juror, the inquiry has become factual in nature and moves to step three. Unlike step two, step three permits the trial court to resolve factual disputes, and whether the prosecutor intended to discriminate is a question of fact * * *”
 
 (Allen
 
 at 110 [citation omitted]). The court then determines if the reasons given are pretextual.
 

 Turning to the cases before us, in
 
 James,
 
 although the defense attorney named four other women in alleging a pattern and a prima facie case, it is clear that the defense challenged only Bemejam when she stated “and now Miss Benejam [sic], and I am asking [the prosecutor] to give a reason why he is kicking her off. She said she could be fair. She has no problems. She doesn’t have any family in law enforcement. She didn’t say much at all.” If defendant intended to challenge all five prospective jurors, as he now alleges for the first time on appeal, rather than solely challenging Bemejam, he should have expressed that contention. Since he did not, this issue is unpreserved.
 

 The defense attorney in
 
 Jones,
 
 in seeking to make out a prima facie case, named four individuals, three that the People struck with peremptory challenges during voir dire and one that was removed by the court for cause. From the wording used by the defense, it is clear that he was not challenging all four people. Thus, defendant did not challenge the court for excusing potential jufor Nau for cause. He also did not challenge the prosecutor’s peremptory challenge of Tuckedt in the first round. Only when the prosecution exercised a peremptory challenge against Caviness did the defense attorney say, “Now another black man, Caviness, People exercise peremptory. At this point I think it’s the prosecutor’s burden to show that this isn’t race based.” From this wording, it is unclear whether the defense was challenging Caviness only or both males currently before the court in the fourth round of voir dire. In any event, this wording cannot be interpreted to include Tuckedt.
 

 The People went on to give an explanation as to why they used all three peremptory challenges. The defendant now contends that the reason given for challenging Tuckedt was pretextual. However, defendant did not assert, at the time of the
 
 Batson
 
 challenge, that he was including Tuckedt. Even after the People’s response, defendant remained silent, an indication that the challenge did not originally include Tuckedt.
 
 *272
 
 By accepting the People’s explanation without any additional objection at a time that it could have been addressed, defendant failed to preserve a challenge to Tuckedt.
 

 Finally, the exclusion of jurors on the basis of race continues to plague the judicial system, and courts must be vigilant in eradicating this problem. The Equal Protection Clauses of both the Federal Constitution (14th Amend) and State Constitution (art I, § 11) prohibit the exclusion of persons on the basis of race
 
 (People v Kern,
 
 75 NY2d 638, 649 [1990]). Moreover, service on a jury is a civil right which cannot be arbitrarily denied (NY Const, art I, § 1; Civil Rights Law § 13;
 
 People v Kern,
 
 75 NY2d at 649). Nevertheless, any claim of improper discrimination in the selection of jurors must be specific and timely made. When, as here, a party raises an issue of a pattern of discrimination in excluding jurors, and the court accepts the race neutral reasons given, the moving party must make a specific objection to the exclusion of any juror still claimed to have been the object of discrimination. It is incumbent upon the moving party to be clear about any person still claimed to be improperly challenged.
 
 [4]
 

 Accordingly, in each case, the order of the Appellate Division should be affirmed.
 

 Chief Judge Kaye and Judges Levine, Ciparick, Wesley, Rosenblatt and Graffeo concur.
 

 In each case: Order affirmed.
 

 [1]
 

 . The prosecutor explained:
 

 “Your Honor, I focused on occupations. I tried to keep off social workers. Miss Accoo, I stated the reason for her already. She believed that her personal beliefs — she can’t impose them upon anybody else. I don’t think she is someone who should be a juror in my personal opinion. I am trying to keep social workers off the jury. And, Miss Nichol[a]s, she is a nurse. I am trying to keep nurses off the jury. There was a discussion about the medical records that the defendant was prematurely released from a hospital. * * *
 

 “I don’t want a nurse- — for the following reason. I don’t want anybody on the jury who comes in contact with people in the hospital. I think that just talking to people in the profession, I think there’s tension between the people who make decisions about medical issues and those who have to carry them out, and basically my concern in this case is that arguments were made to the jury — to a nurse that this person was so bad and they were let out but never should have been let out. They don’t get to make the decision about who stays in and who doesn’t. They have to follow someone else’s opinion. I bet there’s a lot of resentment there. And, they would sympathize with the Defense’ position that the defendant has been sick all along and acutely schizophrenic. The doctor made the wrong call and that’s why the person is out. It’s a mistake. It happens all the time. I think that any nurse — have a concern with any nurse being on the jury. That went into my decision.”
 

 [2]
 

 . The prosecutor explained his reasons for the strikes as follows: First, as to Caviness:
 

 “Most telling for me was when Mr. Smith [defense attorney] was asking Mr. Montalto [another prospective juror] [whose] roommate is a detective, he was asking him if he thought that it happens sometimes that detectives sometimes pressure confessions out of defendants and I glanced over to Mr. Caviness, he was not even being asked alike [sic], sure they are, sure, yop yop, * * * this is the heart of my case, this is the more serious by far of my two charges and as I’ve gone over with your Honor and the jury, the only evidence we have is this confession, it’s a powerful piece of evidence until it’s ripped apart by the theory that it’s pressured out of the defendant.”
 

 Second as to Ms. Tuckedt:
 

 “[W]hile it’s true I did exercise a peremptory as to a black woman in the second row. I chose a black woman, she’s the second juror we picked * *
 

 Finally, as to Mr. Noel:
 

 “IH]e told me that he had some problems with police officers in the past and because again my most important piece of evidence is this detective and how she treated this defendant, I don’t think it’s wise to pick someone who may have a problem with police officers, may be looking for a way to overly scrutinize the testimony because they have a problem with police officers.”
 

 [3]
 

 . “Under the Equal Protection Clause, a defendant may not exercise a peremptory
 
 challenge to
 
 remove a potential juror solely on the basis
 
 of
 
 the juror’s gender, ethnic origin, or race. See,
 
 e.g., J.E.B. v. Alabama ex rel. T.B.,
 
 511 U.S. 127 (1994) (gender);
 
 Hernandez
 
 v.
 
 New York,
 
 500 U.S. 352 (1991) (ethnic origin);
 
 Batson
 
 v.
 
 Kentucky,
 
 476 U.S. 79 (1986) (race)”
 
 (United States v Martinez-Salazar,
 
 528 US 304, 315 [2000]).
 

 [4]
 

 . In
 
 Batson v Kentucky
 
 (476 US 79, 102 [1986]), Justice Thurgood Marshall wrote a concurring opinion in which he detailed the limitations of the
 
 Batson
 
 procedure and argued for the elimination of peremptory challenges. Several Judges of this Court have also questioned the peremptory procedure and called on the Legislature to revisit peremptory challenges (see,
 
 People v Hernandez,
 
 75 NY2d 350, 358 [1990] [Titone, J., concurring];
 
 People v Bolling,
 
 79 NY2d 317, 325 [1992] [Bellacosa, J., joined by Wachtler, Ch. J., and Titone, J., concurring];
 
 People v Brown,
 
 97 NY2d 500, 508 [2002] [Kaye, Ch. J., concurring, with Wesley and Rosenblatt, JJ., joining in the concurrence]). I join with those members of this Court, past and present, who urge the Legislature to take a hard look at the issue of peremptory challenges.