Manuel RODRIGUEZ, Petitioner–
Appellee,

v.

Sunny L. SCHRIVER, Superintendent,
Wallkill Correctional Facility,
Respondent–Appellant.

Docket No. 03–2973.

United States Court of Appeals,
Second Circuit.

Argued: July 12, 2004.

Decided: Nov. 22, 2004.

Robin A. Forshaw, Assistant Solicitor General (Eliot Spitzer, Attorney General of the State of New York, Michael Belohlavek, Deputy Solicitor General, on the brief), New York, New York, for respondent-appellant.

Mark W. Zeno, Center For Appellate Litigation (Robert S. Dean, on the brief), New York, New York, for petitioner-appellee.

Before: CALABRESI and SOTOMAYOR, Circuit Judges, and BERMAN, District Judge.[*]

BERMAN, District Judge.

Respondent–Appellant Sunny Schriver, in his capacity as Superintendent of the Wallkill Correctional Facility ("Schriver"), appeals from the judgment of the United States District Court for the Southern District of New York (Frank Maas, *Magistrate Judge* ) entered pursuant to an Opinion and Order dated November 12, 2003 ("Opinion and Order"), granting Petitioner–Appellee Manuel Rodriguez's ("Rodriguez") petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254; vacating Rodriguez's May 2, 1988 state conviction of criminal sale of a controlled substance in the third degree in violation of New York Penal Law § 220.39(1); and directing that Rodriguez be retried within ninety days: Magistrate Judge Maas found that the prosecutor at Rodriguez's trial in Supreme Court, New York County unlawfully exercised a peremptory challenge to exclude a juror named Francis Gomez ("Gomez") because the juror was from the city of Santo Domingo, *Rodriguez v. Schriver,* No. 99 Civ. 8660, 2003 WL 22671461, at *16 (S.D.N.Y. Nov.12, 2003), in violation of *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).[1]

We conclude that the Appellate Division properly rejected Rodriguez's *Batson* challenge to juror Gomez's removal. Because the prosecutor's explanation of his decision to remove Gomez was, in fact, a neutral explanation, we believe that the Appellate Division's decision correctly treated all of Rodriguez's *Batson* claims as challenges to allegedly pretextual explanations. The Appellate Division clearly and unambiguously dismissed all of Rodriguez's *Batson* challenges on the basis of a valid, independent state procedural bar. We therefore vacate the District Court's grant of habeas relief and remand the case with instructions to enter a judgment denying Petitioner's application for a writ of habeas.

## I.  Background

Rodriguez was arrested during a November 1987 "buy and bust" operation on the Upper West Side of Manhattan and was convicted, following a jury trial, of one count of criminal sale of a controlled substance in the third degree.[2] The jury determined that Rodriguez had sold two vials of crack cocaine to an undercover police officer named Christopher Hoban who was a principal witness against Rodriguez at trial.[3] Between the dates of his conviction and sentencing, Rodriguez moved before

---

[*] The Honorable Richard M. Berman, United States District Court for the Southern District of New York, sitting by designation.

1.  The parties consented to the Magistrate Judge's resolution of this matter for all purposes pursuant to 28 U.S.C. § 636(c).

2.  N.Y. Penal Law § 220.39(1) provides that "a person is guilty of criminal sale of a controlled substance in the third degree when he knowingly and unlawfully sells a narcotic drug."

3.  Rodriguez was the sole defense witness at trial and he testified that he was mistakenly identified as one of the persons involved in the sale of crack to Hoban. *Rodriguez,* 2003 WL 22671461, at *2.

the trial court pursuant to New York Criminal Procedural Law ("C.P.L.") § 330.30(3) to set aside the verdict on the ground of newly discovered evidence. The motion was initially successful and on June 24, 1988 the trial court ordered a new trial. However, upon appeal, in May 1993, the Appellate Division reversed, concluding, *inter alia*, that Rodriguez's new evidence was insufficient and remanding the case for sentencing. *See People v. Rodriguez*, 193 A.D.2d 363, 366, 596 N.Y.S.2d 824, 827 (App. Div. 1st Dep't 1993). Leave to appeal to the New York Court of Appeals was denied on June 29, 1993, *People v. Rodriguez*, 81 N.Y.2d 1079, 619 N.E.2d 677, 601 N.Y.S.2d 599 (1993), and Rodriguez was sentenced on May 18, 1995 to 4½ to 9 years of imprisonment.

Upon his direct appeal, Rodriguez argued that the prosecutor had used his peremptory challenges against four "Hispanic" jurors in violation of the Equal Protection Clause of the Fourteenth Amendment. Rodriguez asserted that the prosecutor's explanations for his peremptory challenges to three jurors, *i.e.*, Juana Nieves, Orlando Platos, and Pedro Velez, were "pretextual." Rodriguez also asserted that the reasons given by the prosecutor for his peremptory challenge of a fourth juror, Gomez, were facially discriminatory because they referenced Santo Domingo, Gomez's city of origin.

The Appellate Division rejected the appeal as to all four jurors and found that:

Defendant's claim that the prosecutor's stated reasons for challenging four prospective jurors were pretextual is unpreserved for appellate review (*People v. Rivera*, 225 A.D.2d 392, 640 N.Y.S.2d 483, *lv. denied* 88 N.Y.2d 969, 647 N.Y.S.2d 723, 670 N.E.2d 1355), and we decline to review it in the interest of justice. Were we to review this claim, we would find that defendant failed to meet his burden of showing that these reasons were pretextual (*see, People v. Allen*, 86 N.Y.2d 101, 629 N.Y.S.2d 1003, 653 N.E.2d 1173).

*Rodriguez*, 251 A.D.2d at 242, 673 N.Y.S.2d at 913. Leave to appeal to the New York Court of Appeals was denied on November 9, 1998. *People v. Rodriguez*, 92 N.Y.2d 985, 706 N.E.2d 754, 683 N.Y.S.2d 766 (1998).

In his habeas petition, Rodriguez again argued that the prosecutor had used his peremptory challenges against four jurors (Gomez, Nieves, Platos, and Velez) in violation of *Batson*. He asserted that the reasons given by trial prosecutor Larry Garment ("Garment") were not race neutral as to juror Gomez and were pretextual as to jurors Nieves, Platos, and Velez. The disputed juror Gomez stated during voir dire that, as a building superintendent in Washington Heights, he had knowledge of at least two instances in which drugs were being sold from apartments for which he was responsible.[4] Rodriguez pointed out that when his trial counsel, Victor Dai-

---

4. Gomez stated the following during voir dire:
   Mr. Garment: All right. You see people dealing drugs in the area where you are the super?
   [Gomez]: Yes.
   Mr. Garment: People deal drugs in your building that you know of?
   [Gomez]: There was 2 there that we usually if we find out about it—one was for about $3,000.00, the lady sold it to these people selling drugs out of there. And there was one apartment that was left for another relative that was dealing drugs out of

there. We had about—when the police came there, they had some cuts and about a thousand capsules that were empty.
   . . . .
   Mr. Garment: ... Is that going to affect your ability to sit on this jury?
   [Gomez]: No.
   Mr. Garment: Cause you any problem?
   [Gomez]: Not at all.
   Respondent–Appellant's Appendix ("App.") at 192–93.

ly–Rivera, objected to the state's peremptory challenges on *Batson* grounds, the following exchanges took place among the Court, the prosecutor, and defense counsel:

> Mr. Daily–Rivera: Your Honor, it seems evident that all of Mr. Garment's challenges, he has challenged every single Hispanic that has made the panel.
>
> . . . .
>
> Mr. Garment: As to Mr. Gomez, the fact that he is from Santo Domingo, I would submit based on my experience with a number of narcotics dealers who have been arrested while prosecuted [sic] from Santo Domingo—
>
> The Court: Counsel, even the fact he witnessed [drug sales] is sufficient grounds.
>
> Mr. Garment: I feel he [Gomez] might not be a fair and impartial juror. I feel that Miss Nieves did not exhibit to me the attention and the sophistication she will be called upon to evaluate the possible flaws in an officer's testimony and the possibility he might be lying.
>
> The Court: Any others?
>
> Mr. Garment: Yes, I think Mr. Platos is too close in age and experience in living in the Upper Westside [sic], dressing similarly to the defendant, that he might unduly identify with the defendant and not be able to render a fair and impartial verdict . . . .
>
> . . . .
>
> The Court: The nature of the composition of the panels, I certainly am not of the opinion that the People have been using their challenges based upon racial grounds.

App. at 213–15. As to Velez, the prosecutor stated that "his attention does not seem sufficiently clear to be able to understand the issues . . . in this case. He answered in a vague sort of disinterested manner," App. at 248–49, whereupon the court and Rodriguez's counsel had the following exchange:

> Mr. Daily–Rivera: I do object at this time. Mr. Garment challenged every single Hispanic on the record.
>
> The Court: Counsel has given his explanation.
>
> Mr. Daily–Rivera: I'm merely making my record, your Honor.
>
> The Court: And I'm making my own.

App. at 249.[5]

Following the submission of Rodriguez's petition *pro se*, Judge Maas determined that " 'Rodriguez—unlike most habeas petitioners—may be entitled to the issuance of a writ,' " *Rodriguez*, 2003 WL 22671461, at *6, and he appointed Mark W. Zeno of the Center for Appellate Litigation to represent Rodriguez.[6] Judge Maas also held an evidentiary *Batson* hearing on March 5, 2003, at which Garment, the only person to testify, explained his rationale for challenging Gomez as follows: "there were a lot of drug dealers who were from Santo Domingo"; many of them worked "out of buildings"; and building superintendents "sometimes . . . allow[ed] drug dealers to use the vestibules of buildings, the basements of buildings, the hallways of buildings, either because they were being paid off or they were being intimidated or they just didn't give a damn." App. at 298. Garment also testified before Judge Maas that Gomez's voir dire responses raised three "red flags":

> [Mr. Garment]: So I had these three criteria here: There was somebody from a drug dealing area who [sic]

---

5. Velez was seated as an alternate juror. App. at 251–52.

6. The Center for Appellate Litigation also represented Rodriguez before the Appellate Division.

had a lot of persons from Santo Domingo who were dealing drugs, cocaine predominantly; in the Washington Heights area, which was the Upper West Side ...; and he was a super of the building. So these were red flags for me.

[The State]: Is there anything in particular about Gomez' responses during the voir dire that lent—that may have lent particular credence to this?

[Mr. Garment]: ... Now, whether they [drug dealers] didn't bother him or he wasn't concerned about it was unclear to me. But ... I didn't get a clear view that he was, you know, horrified by drug dealers.

App. at 299.[7]

In his Opinion and Order, Judge Maas found that Rodriguez's *Batson* challenge to the removal of jurors Nieves, Platos, and Velez had been rejected by the Appellate Division on the basis of an independent and adequate state procedural bar (namely, New York's contemporaneous objection rule), and was therefore unreviewable. However, Judge Maas determined that Rodriguez's claims regarding juror Gomez's removal had not been clearly and unambiguously dismissed on the basis of a state procedural bar. Judge Maas concluded that:

> [a]lthough the reference to four jurors clearly suggests an intention to include both of Rodriguez's jury selection claims within the sweep of its holding, the Appellate Division made no mention of Rodriguez's first claim that the prosecutor's reason for challenging juror Go-

mez, far from being pretextual, was true, and therefore a blatant *Batson* violation.

*Rodriguez,* 2003 WL 22671461, at *13. Because the Appellate Division's opinion only discussed explicitly Rodriguez's *Batson* claims regarding "pretextual," as opposed to non-neutral, explanations, Judge Maas concluded that the challenge to Gomez's removal was not procedurally barred. And upon finding that Garment's justification for the peremptory challenge was not race neutral, Judge Maas held that Rodriguez was entitled to habeas relief. The State appealed the issuance of the writ; Rodriguez did not cross-appeal any part of the District Court's opinion.

## II. Discussion

We review *de novo* the District Court's grant of habeas relief, and we review its factual findings for clear error. *Jenkins v. Artuz,* 294 F.3d 284, 290 (2d Cir.2002). Federal habeas relief is not available if "a state court declined to address a prisoner's federal claims because the prisoner had failed to meet a state procedural requirement." *Coleman v. Thompson,* 501 U.S. 722, 729–30, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991).

Judge Maas concluded that Rodriguez's *Batson* claim as to three jurors was procedurally barred because "although Rodriguez's counsel protested that Garment was challenging all of the Hispanic jurors, he never suggested that any of the stated reasons for excusing jurors Nieves, Platos and Velez were pretextual."[8] *Rodriguez,* 2003 WL 22671461, at *13. Judge

---

7. On handwritten notes that Garment kept during jury selection, under Mr. Gomez's name were listed three factors: "Santo Domingo," "U.W. Side," and "super of bldg." "[S]uper of bldg." was underlined and circled. App. at 321.

8. This Court has described *Batson's* "three-step burden-shifting framework for the evi-

dentiary inquiry into whether a peremptory challenge is race-based" as follows:

> First, the moving party—i.e., the party challenging the other party's attempted peremptory strike—must make a prima facie case that the nonmoving party's peremptory is based on race. Second, the nonmoving party must assert a race-neutral reason for

Maas cited New York's contemporaneous objection rule found in C.P.L. § 470.05(2), which provides that:

> [f]or purposes of appeal, a question of law with respect to a ruling or instruction of a criminal court during a trial or proceeding is presented when a protest thereto was registered ... at the time of such ruling or instruction or at any subsequent time when the court had an opportunity of effectively changing the same.

C.P.L. § 470.05(2); *see also Galarza v. Keane,* 252 F.3d 630, 638 (2d Cir.2001) ("[A] party must raise his or her *Batson* challenges in a manner that would allow a trial court to remedy the problem at trial."). That is, defense counsel had failed to comply with C.P.L. § 470.05(2) "because he never asserted an objection [demonstrating pretext] at a time when [the trial court] could have considered—and conceivably cured-the alleged infirmity." *Rodriguez,* 2003 WL 22671461, at *13; *see Garcia v. Lewis,* 188 F.3d 71, 79 (2d Cir.1999) ("[W]e have observed and deferred to New York's consistent application of its contemporaneous objection rules."); *Glenn v. Bartlett,* 98 F.3d 721, 724–25 (2d Cir.1996); *Bossett v. Walker,* 41 F.3d 825, 829 n. 2 (2d Cir.1994); *People v. James,* 99 N.Y.2d 264, 272, 784 N.E.2d 1152, 1157, 755 N.Y.S.2d 43, 48 (2002) (holding that the defense must make "a specific objection to the exclusion of any juror still claimed to have been the object of discrimination"). Judge Maas also held, correctly in our view, that the Appellate Division's determination that Rodriguez's *Batson* claim as to jurors Nieves, Platos, and Velez was unpreserved "constitutes an independent and adequate state ground which precludes any further consideration of Rodriguez's claim regarding these three jurors." *Rodriguez,* 2003 WL 22671461, at *13.

■ We disagree with Judge Maas's conclusion that a state procedural bar does not also cover Rodriguez's challenge to juror Gomez's removal. We need only concern ourselves with whether Garment's explanation was itself inherently discriminatory. *See Purkett v. Elem,* 514 U.S. 765, 767–68, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995) (per curiam) ("The second step of this process does not demand an explanation that is persuasive, or even plausible.... Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral.") (quotation marks omitted).

Petitioner argues that the invocation of Santo Domingo is inherently discriminatory, contending for example that Santo Domingo represents a "central ingredient" of "Gomez's Latino-*ness* " and "[b]ecause the prosecutor challenged Gomez solely because of his national origin, and his Dominican homeland defined his ethnicity and his race, the prosecutor's challenge was discriminatory." Brief for Petitioner at 28. This argument relies on the suggestion that Santo Domingo is a code for Latino, a group that *Batson* protects. *See United States v. Rudas,* 905 F.2d 38, 41 (2d Cir.1990). But translating the prosecutor's reference to a specific city into a general ethnicity requires a critical inferential step, and this mental leap suggests that the reason offered by the prosecutor may not be *inherently* discriminatory. That probability becomes an appropriate conclusion in light of the other factors

---

the peremptory challenge. The nonmoving party's burden at step two is very low.... [A]lthough a race-neutral reason must be given, it need not be persuasive or even plausible. Finally, the court must determine whether the moving party carried the burden of showing by a preponderance of the evidence that the peremptory challenge at issue was based on race.
*Harris v. Kuhlmann,* 346 F.3d 330, 343 (2d Cir.2003) (quoting *McKinney v. Artuz,* 326 F.3d 87, 97–98 (2d Cir.2003) (internal citations, quotation marks and footnote omitted)).

Garment cited as underlying his decision to strike Gomez.[9]

Bolstering the minimal potential neutrality of Garment's explanation are Garment's testimony and voir dire notes to the effect that it was not Santo Domingo alone that "raised red flags" but that it was the confluence of Gomez's employment in combination with Santo Domingo that triggered his concern. App. at 299–300, 321. Garment testified that (1) in his experience, some of the Washington Heights area superintendents were passively involved with drug dealers by virtue of intimidation or greed (App. at 298–299); (2) many of the dealers that, in Garment's experience, had been prosecuted from that specific neighborhood were themselves from Santo Domingo (App. at 298); and (3) Gomez did not appear "horrified" by the notion of drug dealers (App. at 298–300). Thus, in light of this corroborating evidence, the inference to be drawn is not that Santo Domingo was code for Latino, but rather that Garment was concerned with indicia suggesting that Gomez himself might have been involved in drug dealing, or potentially tolerant of it. If accepted as true, then, this statement demonstrates that the decision to strike juror Gomez was racially and ethnically neutral. Since no discriminatory intent, as is required to demonstrate non-neutrality under *Batson*, was inherent in the prosecutor's explanation, any challenge to the exclusion of Gomez would necessarily have to be a claim that Garment's explanation was false, that is, that it was pretextual.

All these facts were known to the Appellate Division when it evaluated Rodriguez's

*Batson* challenges to the removal of jurors Gomez, Nieves, Platos, and Velez. In his brief before the Appellate Division, Rodriguez presented his challenge to Gomez's removal as a neutrality challenge; but as we have just discussed, such a claim was meritless. Still, if Rodriguez could show that Garment's neutral explanation were not true, that it was in fact a *pretext* for discrimination, he might well have been able to demonstrate that Gomez had been removed from the jury in violation of *Batson*. We believe that the Appellate Division was sensitive to Rodriguez's presentation of his claims, and that it construed Rodriguez's challenge to Gomez's removal in the light most favorable to Rodriguez— that is, as a claim of pretextual discrimination, and not one of non-neutral removal. This was inherent in the Appellate Divisions' reference to "[d]efendant's claim that the prosecutor's stated reasons for challenging *four* prospective jurors were pretextual." *Rodriguez*, 251 A.D.2d at 242, 673 N.Y.S.2d at 913 (emphasis added). Rodriguez's brief, given a charitable construction, presented a single claim of pretextual discrimination. It was exactly this claim that the Appellate Division rejected as "unpreserved for appellate review." *Id.*

Because the challenge to Garment's removal of Gomez, like the challenge to Garment's removal of Nieves, Platos, and Velez, was expressly rejected as unpreserved (in accordance with New York's contemporaneous objection rule), we find that the Appellate Division clearly and unambiguously dismissed all of Rodriguez's *Batson* claims on the basis of an adequate and independent state procedural bar.[10]

9. We need not reach the issue of whether or when national origin discrimination is a cognizable group for *Batson* protection, nor need we speculate as to what situations might arise where city of origin might be a proxy for national origin discrimination, or might itself constitute impermissible discrimination.

10. The fact that leave to appeal to the New York Court of Appeals was denied does not change the result, because where "the last reasoned opinion on the claim explicitly imposes a procedural default," a federal habeas court "will presume that a later decision rejecting the claim did not silently disregard

Having found Rodriguez's claim with respect to juror Gomez was procedurally defaulted on independent and adequate state grounds, there is no cause to review his claim on the merits. *See, e.g., Velasquez v. Leonardo*, 898 F.2d 7, 9 (2d Cir.1990) ("[F]ederal habeas review is foreclosed when a state court has expressly relied on a procedural default as an independent and adequate state ground, even where the state court has also ruled in the alternative on the merits of the federal claim.").

### III. Conclusion

For the foregoing reasons, we vacate the District Court's judgment and remand the case to the District Court with instructions to enter a judgment denying the application for a writ of habeas corpus.

that bar and consider the merits." *Ylst v. Nunnemaker*, 501 U.S. 797, 803, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991).