People v Taylor (2020 NY Slip Op 03807)





People v Taylor


2020 NY Slip Op 03807


Decided on July 8, 2020


Appellate Division, Second Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on July 8, 2020
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

MARK C. DILLON, J.P.
COLLEEN D. DUFFY
BETSY BARROS
VALERIE BRATHWAITE NELSON
ANGELA G. IANNACCI, JJ.


2017-12281
 (Ind. No. 229/15)

[*1]The People of the State of New York, respondent,
v
Quaniece S. Taylor, appellant.


Paul Skip Laisure, New York, NY (Sam Feldman of counsel), for appellant.
Melinda Katz, District Attorney, Kew Gardens, NY (John M. Castellano, Johnnette Traill, and Nancy Fitzpatrick Talcott of counsel), for respondent.



DECISION & ORDER
Appeal by the defendant from a judgment of the Supreme Court, Queens County (Stephanie Zaro, J.), rendered September 15, 2017, convicting her of assault in the second degree, assault in the third degree, and petit larceny, upon a jury verdict, and imposing sentence.
ORDERED that the judgment is modified, on the law, by vacating the conviction of assault in the third degree, vacating the sentence imposed thereon, and dismissing that count of the indictment; as so modified, the judgment is affirmed.
On September 10, 2014, the defendant was arrested in connection with an altercation that began on a public bus when her codefendant was playing loud music. At a jury trial, the People contended that the defendant, together with the codefendant and two other accomplices, assaulted two complainants during the altercation and stole a backpack from one of the complainants. Thereafter, the defendant was convicted of assault in the second degree, assault in the third degree, and petit larceny.
On appeal, the defendant argues that the evidence adduced at trial was legally insufficient to sustain the convictions of assault in the second degree and assault in the third degree, as the People failed to prove the required element of "physical injury" (see Penal Law §§ 120.05[2]; 120.00[1]). Viewing the evidence in the light most favorable to the prosecution, as we must (see People v Contes, 60 NY2d 620, 621), we find that there is a valid line of reasoning and permissible inferences from which a rational jury could have found the elements of the crimes proven beyond a reasonable doubt (see People v Danielson, 9 NY3d 342, 349; People v Williams, 84 NY2d 925, 926), as physical injury, pursuant to Penal Law § 10.00(9) was established with evidence that the complainant experienced substantial pain. To the extent the defendant challenges the legal sufficiency of the evidence on the conviction of assault in the second degree based on the People's failure to prove the use of a "deadly weapon or dangerous instrument," a rational trier of fact could have likewise concluded beyond a reasonable doubt that the defendant used a dangerous instrument against one of the complainants, both alone and in concert with others (see Penal Law § 10.00[13]; People v Gurgov, 129 AD3d 989, 990). Further, upon the exercise of our factual review power, we are satisfied that the convictions of assault in the second degree and assault in the third degree were [*2]not against the weight of the evidence (see CPL 470.15[5]; People v Avila, 117 AD3d 1071).
However, as the People concede, the defendant's conviction of assault in the third degree must be vacated and that count of the indictment dismissed as an inclusory concurrent count of assault in the second degree (see CPL 300.40[3][b]; People v Paguay, 132 AD3d 1014; People v McCalla, 90 AD3d 949).
The defendant's contentions that her conviction of petit larceny was multiplicitous and that the verdict on that count was repugnant are not preserved for appellate review. As regards multiplicity, the defendant never objected to the verdict sheet on that basis, did not object to the jury charge when it was given, and otherwise failed to raise the issue during the trial. The defendant's contention that the jury verdict on the petit larceny conviction was repugnant was never raised prior to discharge of the jury (see People v Alfaro, 66 NY2d 985, 987; People v Danon, 167 AD3d 930, 931). We decline to reach these issues in the exercise of our interest of justice jurisdiction (see CPL 470.15).
The issue that divides our panel is the Batson challenge. We agree that the case of Batson v Kentucky (476 US 79) directs a three-step analysis for determining whether peremptory challenges have been used to exclude potential jurors for impermissibly discriminatory reasons. The first step requires that the moving party make a prima facie showing of discrimination in the opponent's exercise of peremptory challenges (see People v Bridgeforth, 28 NY3d 567, 573; People v Smocum, 99 NY2d 418, 421-422). The second step shifts the burden to the nonmoving party to provide race-neutral reasons for peremptorily challenging each of the contested jurors (see People v Payne, 88 NY2d 172, 181). If the nonmoving party fails to meet that burden, the Batson challenge is established. If, however, the nonmoving party provides facially permissible, nondiscriminatory reasons for the exercise of the contested peremptory challenges, the third step of the Batson challenge is then reached (see People v Smocum, 99 NY2d at 422; People v Allen, 86 NY2d 101, 110). During step three, the burden shifts back to the moving party to prove that the nonmovant's reasons for exercising the peremptory challenges were pretextual (see People v Hecker, 15 NY3d 625, 634; People v Smocum, 99 NY2d at 422; People v Allen, 86 NY2d at 110). As the Court of Appeals has cautioned, "meaningful inquiry into the question of discrimination" requires an adherence to this "crucial process" (People v Smocum, 99 NY2d at 423 [internal quotation marks omitted]).
Here, after the third round of jury selection, counsel for the codefendant alleged that the prosecutor had "discriminatorily challeng[ed]" African-American jurors, namely, Ocean, Pustam, Etheart, Marinia, Davis, and Duncan. Counsel for the defendant joined in that application. After the Supreme Court indicated that the defendant had made out a prima facie case for a Batson challenge, and properly invited the People to provide a response under step two, the People asserted that Pustam, who was from Trinidad in the Caribbean, was "not African-American." Defense counsel neither disputed nor objected to the prosecutor's assertion.
Although we agree with our dissenting colleagues that the Supreme Court properly required the People to provide a response under step two, during that step, race-neutral reasons were discussed for the prosecutor's peremptory challenge of various prospective jurors, namely, Pustam, Ocean, Etheart, Marinia, Davis, and Duncan. As noted, the People argued that Pustam, who was from Trinidad in the Caribbean, was not "African-American." Toward the conclusion of the step-two discussion, the court determined that the prosecutor had expressed race-neutral bases for the peremptory challenges to the challenged jurors. The court also advised defense counsel that an exception to the ruling was noted on the record, which was global to the various contested jurors rather than specific to any one of them.
When, as here, a court accepts the reason given by the prosecutor at step two as race-neutral, the Court of Appeals has directed that the defendant "must [then] make a specific objection to the exclusion of any juror still claimed to have been the object of discrimination," during step three (People v James, 99 NY2d 264, 272 [emphasis added]). The Supreme Court's unilateral act [*3]of noting the defendant's "exception" to its ruling is not a specific objection at all, but is a mere general one that fails to preserve the defendant's appellate arguments as to Pustam. The general exception noted by the court did not specify the reason and did not identify which prospective juror, or jurors, the exception was intended to cover.
Had the Batson discussion ended there, the Supreme Court would have committed error in failing to invite defense counsel to address the shifted burden, under step three, of proving that the People's stated reasons for exercising the peremptory challenges were merely pretextual (see People v Smocum, 99 NY2d at 423). However, the discussion with the court did not end there. Despite having made what appeared at first blush to be a Batson ruling and unilaterally noting the defendants' exception to it, the court proceeded to nevertheless engage in the required step-three analysis. Indeed, defense counsel correctly stated at the outset of the continuing discussion that "we [now] have a chance to establish that [the People's] race-neutral reasons are pretextual."
At no time during step three did the defendant argue that the People had failed to meet their burden under step two of the Batson analysis as to juror Pustam. The defendant focused instead on whether the explanations given by the prosecutor during step two were pretextual. During step three, defense counsel specifically argued that the prosecutor's reasons for the peremptory challenges of jurors Ocean and Duncan were pretextual. Defense counsel made absolutely no argument during step three as to jurors Pustam, Etheart, Marinia, and Davis. In other words, the defendant had an opportunity to argue that the People had not met their step-two burden as to the challenged jurors, and an opportunity to argue that the prosecutor's reason for challenging Pustam was pretextual, but did not do either as to Pustam and others, despite making step-three arguments about Ocean and Duncan. The Supreme Court then denied the defendant's Batson challenge that is now before us on appeal, and again unilaterally noted a general exception for the defendant on the record.
A review of the trial transcript leads to the inescapable conclusion that the Supreme Court engaged in all three analytical steps required by Batson v Kentucky and our corresponding case authorities. The defendant made no argument of any kind as to juror Pustam during step three. Accordingly, she has failed to preserve the specific argument which she raises for the first time on appeal, which is based, in part, at least, on facts that are outside the record, to wit, that Pustam's Trinidadian heritage qualifies as "African-American." Indeed, any appellate consideration of this new argument would require this Court to (1) assume facts not within this record; and (2) more importantly, ignore the fact that defense counsel did not dispute or challenge the People's contention that Pustam was not "African-American."
The Court of Appeals has been clear that "[w]hen, as here, a party raises an issue of a pattern of discrimination in excluding jurors, and the court accepts the race neutral reasons given, the moving party must make a specific objection to the exclusion of any juror still claimed to have been the object of discrimination" (People v James, 99 NY2d at 272). The defendant's failure to discuss juror Pustam at all during step three suggests that counsel was not challenging any comment or determination made by the Supreme Court during step two as to Pustam. Similarly, the court's exception noted unilaterally on the record at the conclusion of step three failed to preserve any "specific" argument for the defendant on appeal, as is expressly required by the Court of Appeals. Therefore, without preservation, our analysis of this appeal cannot reach the cases of People v Pescara (162 AD3d 1772) and People v Chance (125 AD3d 993), cited by the dissent in support of a Batson reversal on the basis of skin color. Indeed, unlike those cases, the record here is devoid of any fact as to Pustam's skin color (see e.g. People v Pescara, 162 AD3d at 1773 [prospective juror stated he was "African-American black, Caribbean black" (internal quotation marks omitted); the People did not dispute that the juror was African American]).
Instead, like this case, in People v Alvarado (306 AD2d 18), the defendant failed to make a step three Batson argument to preserve the juror challenge for appellate review. The court in Alvarado noted that unelaborated "exceptions" on the record fail to preserve Batson issues for appellate consideration (see id. at 18), as here.
We also decline to reach the Batson issue as to juror Pustam in the exercise of our interest of justice jurisdiction (see CPL 470.15[6]), since to do so would abrogate our duty to adhere to the "crucial process" required in evaluating a Batson challenge (People v Smocum, 99 NY2d at 423). Here, as already noted, defense counsel used the occasion of step three to address other jurors but did not apparently consider the circumstances of juror Pustam important enough to merit further argument. In any event, the defendant's notable silence about juror Pustam during step three, while affirmatively discussing jurors Ocean and Duncan, means, necessarily, that the defendant failed to meet, or attempted to meet, the shifted step-three burden of proving that the prosecutor's explanation for the peremptory challenge of Pustam was pretextual (see id.; People v James, 99 NY2d at 271-272). Moreover, an exercise of our interest of justice jurisdiction is not appropriate under circumstances where the defendant's argument is based, in part, on facts not within the four corners of the record.
Finally, the prosecutor's stated basis for excluding Pustam—"[she] was from Trinidad. She's not African-American"—is not itself discriminatory, as contended by our colleagues in the dissent, but rather simply a response by the prosecutor to the basis articulated by the defendant for the Batson challenge—that African Americans were being excluded from the jury. Here, the defendant neither disputed nor challenged the People's contention that Pustam is not African American.
The defendant's Batson arguments as to jurors Ocean and Duncan, while preserved, are without merit. The defendant's remaining contention is also without merit.
DILLON, J.P., DUFFY and IANNACCI, JJ., concur.
BARROS, J., dissents, and votes to reverse the judgment, on the law, and order a new trial, with the following memorandum, in which BRATHWAITE NELSON, J., concurs:
At step one of the three-step Batson protocol (see Batson v Kentucky, 476 US 79), the Supreme Court found that the defendant made out a prima facie case of race-based discrimination upon the prosecutor's use of peremptory challenges against prospective jurors Pustam, Ocean, Etheart, Marinia, Davis, and Duncan. At step two, the prosecutor was required to provide facially nondiscriminatory reasons for his use of peremptories against each of the challenged prospective jurors. As to prospective juror Pustam, the prosecutor merely stated, "Ms. Pustam, was from Trinidad. She's not African-American." Since such a statement does not constitute a facially nondiscriminatory reason, the defendant established an equal protection violation at step two, and, therefore, the court committed reversible error by not seating Pustam (see People v Bridgeforth, 28 NY3d 567, 576-577; People v Smocum, 99 NY2d 418, 422). As set forth below, the conclusion of my colleagues in the majority that the defendant's Batson contention is not preserved for appellate review is belied by the record (see CPL 470.05). More troubling, however, is that the majority's preservation analysis contravenes Batson and its progeny, including People v Bridgeforth (28 NY3d 567), by imposing a burden upon the defendant at step two, and imposing an additional burden upon the defendant at step three (see generally id.).
"Jury service is a civil right, rooted in our State Constitution and protected by statute" (People v Hecker, 15 NY3d 625, 649; see NY Const, art I, §§ 1, 11; Civil Rights Law § 13). "Both a privilege and duty of citizenship,' jury service is a fundamental means of participating in government'" (People v Hecker, 15 NY3d at 649, quoting People v Allen, 86 NY2d 101, 108; see People v Kern, 75 NY2d 638, 651-652). When a party excludes a juror simply because of discrimination, both the adverse party and the excluded juror are denied equal protection (see Batson v Kentucky, 476 US at 87-88; People v Jenkins, 75 NY2d 550, 557). Jury selection procedures that purposely exclude individuals based upon discrimination "undermine public confidence in the fairness of our system of justice," and is a stimulant to the prejudice that denies equal justice under the law (Batson v Kentucky, 476 US at 87; People v Jenkins, 75 NY2d at 557-558). "Elimination of a potential juror because of generalizations based on race, gender or other status that implicates equal protection concerns is an abuse of peremptory strikes" (People v Allen, 86 NY2d at 108; see [*4]Batson v Kentucky, 476 US 79).
In determining whether a party has abused peremptory strikes to exclude prospective jurors based on discrimination, trial courts must follow the three-step protocol set forth in Batson v Kentucky (476 US at 96-98). At step one, the movant must present a prima facie case by showing that the nonmovant exercised its peremptory challenges to remove one or more members of a cognizable group from the venire, and that there exist facts and other relevant circumstances sufficient to raise an inference that the nonmovant used its peremptory challenges to exclude potential jurors because of discrimination (see People v Bridgeforth, 28 NY3d at 573; People v Childress, 81 NY2d 263, 266). Only once the movant has met its burden at step one does the burden shift to the nonmovant at step two (see People v Smocum, 99 NY2d at 422).
At step two, the nonmovant must come forward with a nondiscriminatory explanation for each and every challenged peremptory challenge raised by the movant in step one (see People v Bridgeforth, 28 NY3d at 571; People v Smocum, 99 NY2d at 422; People v James, 99 NY2d 264, 270). The burden at step two is "quite minimal" (People v Payne, 88 NY2d 172, 183), and is met by offering any facially neutral reason for the challenge, even if that reason is ill-founded, unpersuasive, or implausible (see Purkett v Elem, 514 US 765, 767-768; Hernandez v New York, 500 US 352, 360; People v Smocum, 99 NY2d at 422; People v Payne, 88 NY2d at 183; People v Allen 86 NY2d at 110). If the nonmovant cannot meet this minimal burden, an equal protection violation is established (see People v Bridgeforth, 28 NY3d at 576; People v Smocum, 99 NY2d at 422).
However, once facially nondiscriminatory reasons are given, "the inference of discrimination is overcome" (People v Smocum, 99 NY2d at 422), and the burden shifts back to the movant to prove that the nonmovant's facially nondiscriminatory reasons were mere pretext for purposeful discrimination (see People v Hecker, 15 NY3d at 634; People v Smocum, 99 NY2d at 422). "[T]he Batson procedure effectuates its purpose only if the steps are followed in sequence" (People v Smocum, 99 NY2d at 422).
The Supreme Court determined, at step one, that the defendant established a prima facie case of race-based discrimination with respect to prospective jurors Pustam, Ocean, Etheart, Marinia, Davis, and Duncan, and that ruling is not being challenged on appeal (see People v Bridgeforth, 28 NY3d at 574). Overall, the prosecutor exercised peremptory challenges on 6 of the 9 black jurors, but used only 6 peremptory challenges on the other 32 persons of other races.[FN1]
Shifting to step two, the prosecutor addressed the basis for each of his peremptory challenges. As to Pustam, the prosecutor stated that "Ms. Pustam, was from Trinidad. She's not African-American." As the prosecutor proceeded to address the other challenges, defense counsel sought to interject, but was instructed by the court to let the prosecutor finish. However, immediately after the prosecutor finished, the court summarily ruled that the prosecutor "made out a race-neutral basis for his peremptories," and noted to defense counsel that "[y]ou have your exception."
At step three, the defendant argued that some of the prosecutor's purported race-neutral explanations were pretextual. The Supreme Court ruled that the prosecutor's explanations were not pretextual, and therefore, denied the defendant's Batson application.
The record establishes that the People failed, at step two, to carry their minimal burden of proffering a facially nondiscriminatory reason for striking Pustam. The prosecutor's [*5]statement that Pustam "was from Trinidad" and not African American does not constitute a facially nondiscriminatory basis for a peremptory strike (see People v Pescara, 162 AD3d 1772, 1773; People v Chance, 125 AD3d 993, 994).
To the extent that the prosecutor was arguing that Pustam, as a Trinidadian, was not African American, such is not an appropriate argument at step two. The court had already determined, at step one, that Pustam was a member of the cognizable racial group. The People did not object to the court's step-one ruling that the defendant made out a prima facie case of discrimination. "[I]t is for the trial court . . . to decide whether [an individual] identified as part of that group share[s] a similar skin color, in the same way the trial court makes determinations about race, gender, and ethnicity classifications" (People v Bridgeforth, 28 NY3d at 574).
Since the People failed to carry their minimal burden of proffering a facially nondiscriminatory reason for striking Pustam, the defendant established an equal protection violation at step two, and therefore, the Supreme Court committed reversible error by not seating Pustam (see id. at 576-577; People v Smocum, 99 NY2d at 422).
Contrary to the determination of my colleagues in the majority, the defendant's contention that the People failed to meet its burden at step two was preserved for appellate review. "[A] question of law with respect to a ruling . . . is presented when a protest thereto was registered" (CPL 470.05[2]; see People v Davis, 69 AD3d 647, 648-649). The Supreme Court expressly registered the defendant's objection to its ruling that the People "made out a race-neutral basis for his peremptories" by telling defense counsel, "you have your exception."
Moreover, the record demonstrates that the Supreme Court directly confronted the defendant's Batson challenge, and expressly resolved, at step two, the issue of whether the prosecutor proffered facially nondiscriminatory reasons for each of the challenged peremptories (see CPL 470.05[2] [issue is preserved where "if in re(s)ponse to a protest by a party, the court expressly decided the question raised on appeal" and also when a party "who without success has . . . sought or requested a particular ruling"]; People v Feingold, 7 NY3d 288, 290 [issue was preserved for appellate review where the court specifically confronted and resolved it]; People v Prado, 4 NY3d 725, 726 [same]). Furthermore, given the court's unequivocal ruling at step two and the court's express notation of the defendant's exception to it, any further objection by the defendant would have been futile (see People v Mezon, 80 NY2d 155, 160-161).
The majority's reliance upon People v James (99 NY2d 264) to evade appellate review of the defendant's step-two Batson challenge is misplaced. Both of the appeals resolved in People v James involved a movant's failure, at step one, to preserve for appellate review the identity of jurors at issue on their respective Batson challenges. No such issue exists in this case, as it is undisputed that Pustam was one of the prospective jurors at issue on the defendant's Batson challenge.
As illustration, in People v James, the defendant objected, at step one, to the prosecutor's use of a peremptory challenge to strike prospective juror Bemejam, and then, at step two, the prosecutor proffered a facially nondiscriminatory basis for striking Bemejam, that is, that Bemejam was a social worker (see id. at 267-268). The Court of Appeals held that the defendant's failure to specify other jurors besides Bemejam at step one foreclosed the defendant's contention, raised for the first time on appeal, that his prima facie case also included objections to the prosecutor's use of peremptories with respect to five other prospective jurors (see id. at 271 ["If defendant intended to challenge all five prospective jurors, as he now alleges for the first time on appeal, rather than solely challenging Bemejam, he should have expressed that contention. Since he did not, this issue is unpreserved"]).
Similarly, in People v Jones, which was decided with People v James, the Court of Appeals noted that the defendant failed to object to the prosecutor's peremptory strike of prospective juror Tuckedt (see id.). The defendant argued, for the first time on appeal, that his Batson challenge encompassed Tuckedt (see id.) The Court of Appeals determined that the defendant's Batson [*6]challenge did not include juror Tuckedt, and, therefore, the defendant's arguments pertaining to Tuckedt were unpreserved for appellate review (see id.).
Here, in contrast to those cases, the Supreme Court ruled that the defendant made out a prima facie case of discrimination with respect to six jurors, including Pustam. The prosecutor then attempted, at step two, to proffer facially nondiscriminatory reasons for striking those six jurors, including Pustam. Given that Pustam was included as part of the prima facie case of discrimination made by the defendant at step one, the prosecutor was required, at step two, to provide a facially nondiscriminatory reason for striking her, and, in fact, specifically addressed Pustam at step two. Thus, People v James does not foreclose appellate review of the defendant's step-two Batson challenge.
Finally, the majority's assertion that the defendant's step-two Batson challenge is unpreserved because the defendant did not address the peremptory strike of Pustam at step three is, likewise, erroneous. At step three, the defendant, as movant, bears the burden of establishing that the facially nondiscriminatory reasons proffered by the prosecutor at step two were a pretext for unlawful discrimination (see People v Hecker, 15 NY3d at 634; People v Smocum, 99 NY2d at 422; People v Payne, 88 NY2d at 181). Since the People failed to proffer, at step two, a facially nondiscriminatory reason for striking Pustam, the burden never shifted back to the defendant, at step three, to show that such non-reason was mere pretext (see People v Bridgeforth, 28 NY3d at 575-576; People v Smocum, 99 NY2d at 422; People v Payne, 88 NY2d at 181).
Notably, my colleagues in the majority take no position on whether the prosecutor provided a race-neutral reason for the use of a peremptory strike against Pustam at step two, but suggests that the Supreme Court nonetheless properly moved to step three because it accepted the reason given. Such analysis appears circular in logic,[FN2] allows the nonmovant to evade its minimal burden at step two of giving a nondiscriminatory reason, and undermines the purpose of a Batson review, which is to ensure equal protection under the law for both the defendant and the prospective juror. By improperly imposing a burden on the movant at step two, and imposing an additional burden on the movant at step three, the majority's preservation analysis subverts the well-established three-step burden shifting protocol set forth in Batson and its progeny.
Our analysis in this case need only "begin and end" with the People's failure, at step two, to provide a facially nondiscriminatory reason for striking Pustam (see People v Bridgeforth, 28 NY3d at 581 [Garcia, J., concurring]). Therefore, I dissent, and vote to reverse the judgment, and remit for a new trial.
ENTER:
Aprilanne Agostino
Clerk of the Court



Footnotes

Footnote 1:The defendant argued that the People used peremptory challenges to strike three of the four African-American jurors in the first round of jury selection, the only African-American juror in the second round of jury selection, and two of the four African-American jurors in the third round of jury selection.

Footnote 2:A reason is accepted by the court because it is nondiscriminatory. A reason is nondiscriminatory because it is accepted by the court.