*1026 Appeal by the defendant from a judgment of the County Court, Nassau County (Robbins, J.), rendered July 20, 2010, convicting him of manslaughter in the first degree and criminal possession of a weapon in the fourth degree, upon a jury verdict, and imposing sentence.
Ordered that the judgment is affirmed.
On August 7, 2009, Jobani Reyes and Zach Rosales were walking home from a movie theater in Westbury at approximately 10:00 p.m., when they passed a group of young men, including the defendant and the codefendant, standing on a street corner. Reyes testified that as he and Rosales passed by the group, he heard the word “chevala,” which he understood as a derogatory Spanish term meaning “enemy” or “coward.” Reyes further testified that immediately after he heard that word, the defendant “lifted up his shirt and shows us [a] knife . . . [and] started saying, ‘la mara, la mara,’ . . . and was making gang signs [with his fingers].” According to later testimony from a Nassau County Police Department detective assigned to the “gang section” of the Special Investigations Squad, the term “la mara” refers to a certain gang which identifies itself as “MS-13,” and which is known to have a presence in the Westbury area. The detective also testified that the term “la mara” is used by MS-13 gang members when they are involved in “a fight or assault[ ] ... to let the person know that it is la mara doing it.”
Reyes and Rosales started running, and they were pursued by the defendant and the codefendant. After Reyes and Rosales separated at a corner, the two men caught up with Rosales. When Reyes returned to aid his friend, he witnessed the defendant repeatedly stabbing Rosales with a knife, and the codefendant beating Rosales with a belt. While the two men were standing over Rosales, a van driven by a friend of Rosales pulled up at the scene, and Reyes heard the codefendant say to the defendant, “Vamanos, Lucky,” meaning,” Let’s go, Lucky.” The defendant and the codefendant then fled the area. Rosales subsequently died as a result of his stab wounds.
The sole defense witness to testify at trial was the defendant’s 14-year-old former girlfriend, who testified, inter alia, that she was the mother of the defendant’s child. She also testified that on the night Rosales was stabbed, beginning at approximately 10:00 p.m., she met with the defendant for about 20 minutes in front of his house.
The jury found the defendant guilty of manslaughter in the first degree and criminal possession of a weapon in the fourth degree. The defendant appeals from the judgment of conviction.
*1027 Contrary to the defendant’s contention, he was not deprived of a fair trial by the prosecutor’s references in her opening statement to the existence of local gangs in the area where the homicide occurred, or by her assertion that the defendant perceived Reyes and Rosales as enemies because they were not part of the MS-13 gang. The references to “gangs” were relevant to the defendant’s motive and intent in committing the homicide, and were necessary background to explain the sequence of events to the jury, and the prosecutor’s opening remarks were supported, inter alia, by the testimony of the detective who was experienced in gang identification and gang lore (see People v Ramirez, 23 AD3d 500, 501 [2005]; People v Oliver, 19 AD3d 512 [2005]; People v Filipe, 7 AD3d 539 [2004]; People v Newby, 291 AD2d 460 [2002]; People v Herrera, 287 AD2d 579 [2001]). Further, any prejudice was alleviated by the trial court’s instruction to the jury that the prosecutor’s references to gangs were merely what the People intended the proof to show at trial (see People v Smart, 96 NY2d 793, 795 [2001]; People v Ramirez, 23 AD3d at 500 [2001]; People v Oliver, 19 AD3d at 513; People v Newby, 291 AD2d 460 [2002]).
The defendant’s contentions that the trial court improperly allowed the People to present evidence that he had committed the uncharged crime of statutory rape by adducing testimony that the sole defense witness was the mother of his child, and that he was prejudiced by deficiencies in the Nassau County crime lab, are unpreserved for appellate review. In any event, these contentions are without merit. Accordingly, the defendant’s additional contention that the cumulative effect of these alleged errors deprived him of a fair trial is also without merit.
Further, the defendant’s contentions raised in his pro se supplemental brief that the Supreme Court erred in denying his Batson challenges (see Batson v Kentucky, 476 US 79 [1986]) to the prosecutor’s peremptory challenges to three prospective jurors during the first round of jury selection (see People v James, 99 NY2d 264, 271-272 [2002]; People v Lemay, 69 AD3d 757 [2010]; People v Thompson, 34 AD3d 852, 853 [2006]; cf. People v Reid, 57 AD3d 695, 696 [2008]) are also unpreserved for appellate review. In any event, the defendant’s Batson challenges were properly denied because the defendant failed to meet his burden of demonstrating a prima facie case of discrimination (cf. People v James, 99 NY2d at 271; see People v Thatcher, 85 AD3d 1065, 1066 [2011]; People v Quiles, 74 AD3d 1241, 1242 [2010]).
Contrary to the defendant’s contention, the prosecutor’s summation remarks which he challenges on appeal did not deprive *1028 him of a fair trial, as they constituted fair comment on the evidence (see People v Stewart, 89 AD3d 1044, 1045 [2011]; People v Sharpe, 87 AD3d 1168 [2011]; People v Cass, 79 AD3d 768 [2010]).
The defendant’s remaining contentions are without merit. Dillon, J.E, Austin, Sgroi and Cohen, JJ., concur.