People v Fuentes-Gonzalez (2019 NY Slip Op 05418)





People v Fuentes-Gonzalez


2019 NY Slip Op 05418


Decided on July 3, 2019


Appellate Division, Second Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on July 3, 2019
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

RUTH C. BALKIN, J.P.
LEONARD B. AUSTIN
HECTOR D. LASALLE
ANGELA G. IANNACCI, JJ.


2010-07962
 (Ind. No. 1873/09)

[*1]The People of the State of New York, respondent,
v
Douglas Fuentes-Gonzalez, appellant.


Robert F. Boutcher, East Setauket, NY, for appellant.
Madeline Singas, District Attorney, Mineola, NY (Judith R. Sternberg and Barbara Kornblau of counsel), for respondent.



DECISION & ORDER
Appeal by the defendant from a judgment of the Supreme Court, Nassau County (Tammy Robbins, J.), rendered July 20, 2010, convicting him of manslaughter in the first degree and criminal possession of a weapon in the fourth degree, upon a jury verdict, and imposing sentence.
ORDERED that the judgment is affirmed.
On August 7, 2009, at approximately 10:30 p.m., Jobani Reyes and Zach Rosales were walking home from a movie theater in Westbury when they passed a group of young men, including the defendant and the codefendant, standing on a street corner. Reyes testified that as he and Rosales passed by the group, he heard the word "chevala," which he understood as a derogatory Spanish term meaning "enemy" or "coward." Reyes further testified that immediately after he heard that word, the codefendant "lifted up his shirt and shows us [a] knife . . . [and] started saying, la mara, la mara,' . . . and was making gang signs [with his fingers]." According to testimony from a Nassau County Police Department detective assigned to the "gang section" of the Special Investigations Squad, the term "la mara" refers to a gang which identifies itself as "MS-13," and which is known to have a presence in the Westbury area. The detective also testified that the term "la mara" is used by MS-13 gang members when they are involved in "a fight or assault[ ] . . . to let the person know that it is la mara doing it."
Reyes and Rosales started running, and they were pursued by the defendant and the codefendant. After Reyes and Rosales separated at a corner, the defendant and the codefendant caught up with Rosales. Reyes returned to aid his friend, and witnessed the codefendant repeatedly stabbing Rosales with a knife as the defendant was beating Rosales with a belt. While the defendant and the codefendant were standing over Rosales, a van driven by a friend of Rosales pulled up at the scene, whereupon Reyes observed the defendant and the codefendant flee the area. Rosales subsequently died as a result of his stab wounds.
The jury found the defendant guilty of manslaughter in the first degree and criminal possession of a weapon in the fourth degree. The defendant appeals from the judgment of conviction.
Contrary to the defendant's contention, he was not deprived of a fair trial by the prosecutor's references in her opening statement to the existence of local gangs in the area where the homicide occurred, or by her assertion that the defendant perceived Reyes and Rosales as enemies because they were not part of the MS-13 gang. As we held on the codefendant's appeal, "[t]he references to gangs were relevant to the defendant's motive and intent in committing the homicide, and were necessary background to explain the sequence of events to the jury, and the prosecutor's opening remarks were supported, inter alia, by the testimony of the detective who was experienced in gang identification and gang lore" (People v Sandoval, 100 AD3d 1025, 1027; see People v Guerrero, 150 AD3d 883; People v Guevara, 96 AD3d 781; People v Ramirez, 23 AD3d 500, 501; People v Oliver, 19 AD3d 512; People v Filipe, 7 AD3d 539; People v Newby, 291 AD2d 460; People v Herrera, 287 AD2d 579). Further, "any prejudice was alleviated by the trial court's instruction to the jury that the prosecutor's references to gangs were merely what the People intended the proof to show at trial" (People v Sandoval, 100 AD3d at 1027; see People v Smart, 96 NY2d 793; People v Ramirez, 23 AD3d at 500; People v Oliver, 19 AD3d at 513; People v Newby, 291 AD2d at 460).
The defendant's contention that the Supreme Court erred in admitting certain cell phone records into evidence at trial on the ground that the prosecution did not obtain those records in accordance with the Stored Communications Act (see 18 USC § 2703[d]) is unpreserved for appellate review (see CPL 470.05[2]). In any event, contrary to the defendant's contention, the record demonstrates that the prosecution properly obtained the cell phone records by court order issued pursuant to the Stored Communications Act (see People v Rubin, 143 AD3d 846, 847; People v Sorrentino, 93 AD3d 450, 451).
The sentence imposed was not excessive (see People v Suitte, 90 AD2d 80).
BALKIN, J.P., AUSTIN, LASALLE and IANNACCI, JJ., concur.
ENTER:
Aprilanne Agostino
Clerk of the Court