■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v PETER ROSADO, Appellant.—Appeal by the defendant from a judgment of the Supreme Court, Queens County (Bambrick, J.), rendered April 12, 1988, convicting him of murder in the second degree (three counts), arson in the second degree, and burglary in the first degree, upon a jury verdict, and imposing sentence.

Ordered that the judgment is affirmed.

At approximately 4:00 A.M., on April 9, 1984, a boarded-up bungalow on the beach at Far Rockaway in Queens, was burned down. Investigators discovered human remains in the wreckage. A police investigation was begun immediately. The defendant was identified as a suspect within three months of the incident but was not arrested until September 26, 1985. The arrest occurred soon after a witness placed the defendant and others at the bungalow just prior to its becoming engulfed in flames. In addition, the witness saw the defendant and the codefendant Joseph Durant watching the fire and overheard the appellant say to Durant, "I torture him good". The trial was not commenced until February 23, 1988. On appeal, the defendant argues that he was prejudiced by the preindictment and postindictment delay.

New York has never drawn a fine distinction between the assessment of due process claims based upon preindictment delay and the constitutional speedy trial standard applicable to postindictment delay *(see, People v Singer,* 44 NY2d 241, 252-253). Both involve the balancing of a number of factors including: (1) the length of the delay; (2) the reason for the delay; (3) whether there is any indication that the delay impaired the defense; (4) the seriousness of the underlying offense; and, for postindictment delay, (5) whether there has been an extended period of pretrial incarceration *(see, People v Dean,* 45 NY2d 651; *People v Singer, supra; People v Taranovich,* 37 NY2d 442; *People v Bonsauger,* 91 AD2d 1001; *People v Bryant,* 65 AD2d 333). The evaluation is necessarily ad hoc *(see, People v Taranovich, supra; People v Bryant, supra).*

With regard to preindictment delay, courts have recognized the need for the police to investigate a crime and gather evidence before moving ahead with a prosecution *(see, People v*

*Bryant, supra,* at 338-339; *People v Hoff,* 110 AD2d 782, 783). A delay that results from a good-faith investigation does not deprive the defendant of due process, even if he is somewhat prejudiced as a result *(see, United States v Lovasco,* 431 US 783, 796; *People v Singer, supra,* at 254; *People v Staley,* 41 NY2d 789, 792; *People v Hoff, supra; People v Bonsauger, supra).*

In the instant case, the record indicates that the police diligently sought evidence establishing the defendant's guilt during the 18-month period between the incident and his arrest. There is no reason to conclude that the investigation was not undertaken in good faith. Moreover, as will be seen below, the defendant's claims of prejudice are unavailing.

With regard to the postindictment delay, the defendant was incarcerated from September 26, 1985, through the commencement of the trial almost 2½ years later. This was clearly a lengthy incarceration. However, the defendant was charged with four counts of murder, the most serious crime in our legal system. The record is not completely developed as to the reason for the delay. Nevertheless, it appears that much of the delay resulted from the defendant's own actions or circumstances not chargeable to the prosecution.

In addition, the defendant's claim of prejudice is unpersuasive. He merely makes belated complaints about the discovery materials provided to him by the prosecution. If the defendant was dissatisfied with the redactions in the police reports he received in early 1986, his remedy was to seek relief pursuant to CPL article 240. His failure to obtain discovery through the appropriate procedures cannot be parlayed into prejudice for the purposes of due process and constitutional speedy trial claims.

Thus, a review of the five aforementioned factors indicates that the defendant was not deprived of his constitutional rights to due process or a speedy trial.

In addition, the defendant's *Batson* claim, based on the use by the Assistant District Attorney of peremptory challenges against 5 of the 7 Hispanic venire persons is not preserved for appellate review. The defendant did not make a formal *Batson* objection; he merely noted a pattern of exclusion. In the brief colloquy that followed, the defendant did not press the issue further by requesting a hearing or a ruling, nor did he move for a mistrial. Therefore, the issue is not preserved for appellate review *(see, People v Hernandez,* 122 AD2d 856; *People v De Chiaro,* 48 AD2d 54, 57, *cert denied* 423 US 894). In light of

the fact that one Hispanic person was selected as a juror and another as an alternate, we decline to address this issue in the interest of justice.

We have considered the defendant's remaining contentions and find them to be without merit (see, People v Branch, 46 NY2d 645; see also, People v Blyden, 55 NY2d 73; People v Culhane, 33 NY2d 90, 108; People v Gaimari, 176 NY 84, 94; People v Rodriguez, 147 AD2d 719; People v Centino, 133 AD2d 776; People v Garafolo, 44 AD2d 86, 88). Mangano, P. J., Thompson, Miller and Ritter, JJ., concur.