(March 27, 2001)

■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v SCOTT McLEOD, Also Known as JAMES BROWN, Appellant. [722 NYS2d 507] —Judgment, Supreme Court, Bronx County (Gerald Sheindlin, J., on speedy trial motion; Harold Silverman, J., at jury trial and sentence), rendered December 24, 1998, convicting defendant of criminal possession of a controlled substance in the second degree, and sentencing him to 6 years to life in prison, unanimously affirmed.

In the second round of jury selection, the court noted *sua sponte* that the prosecutor had exercised seven consecutive peremptory challenges against black prospective jurors. Asked to provide a racially neutral explanation, the prosecutor stated, with respect to four of the challenged panelists, that one had "a sister in rehab" (Ms. Harris) and that he did not want any juror who was a teacher (Ms. Holden), social worker (Ms. Polite), former social worker (Ms. Brown) or the spouse of a social worker (Mr. Douglas). As to another venireperson (Ms. Hill), he stated, "I felt that there was absolutely no contact of any kind there. I was not able to really make any kind of contact

with her, either through eye contact or any kind of contact." Of a seventh panelist (Ms. Smith), he stated, "I don't have a reason, I just didn't feel like picking her for the jury."

Defense counsel expressed his view that the proffered explanations were pretextual. Supreme Court allowed two of the peremptory challenges (Ms. Harris and Ms. Polite), but did not rule on the reasons given in support of the other five. The court directed that they remain as venirepersons, to be empaneled "if I see the pattern continuing, I will then make my own determination." Defendant raised no objection to this procedure. The prosecutor thereupon withdrew his challenges to the last three prospective jurors. Defense counsel entered his own peremptory challenges to two of them (Ms. Smith and Mr. Douglas), and the third (Ms. Holden) was duly empaneled.

In the course of trial, Supreme Court revisited the *Batson* issue (*see, Batson v Kentucky*, 476 US 79), ruling that by withdrawing his last three challenges, the prosecutor had obviated any pattern of racially-motivated peremptory challenges. Again, defendant raised no objection.

Though defendant now regards the procedures employed as "unusual," he failed to address his concerns to the court, and the objection is unpreserved for our review. There is no issue with respect to the five jurors who were either validly excused, empaneled or peremptorily challenged by the defense; and, having acquiesced in the retention of the other two venirepersons to be seated as either jurors or alternates, in the court's discretion, defendant cannot now assign error to the failure to further explore the prosecutor's reasons for his challenges. In the absence of a particularized objection to the adequacy of the remedial measures adopted by the court in response to the *Batson* issue (raised *sua sponte*), the issue is unpreserved for appellate review (CPL 470.05; *People v Turriago*, 90 NY2d 77, 83-84), and we decline to reach it in the interest of justice (CPL 470.15).

The procedure employed by Supreme Court is not without precedent (*People v Moten*, 159 Misc 2d 269, 272), and the Trial Justice is accorded procedural flexibility in conducting a *Batson* inquiry (*People v Hameed*, 88 NY2d 232, 237, *cert denied* 519 US 1065). This Court has consistently declined review where a "[d]efendant failed to preserve his current claim that the court did not follow the three-step *Batson* protocols in determining various claims of discriminatory exercise of peremptory challenges" (*People v Swails*, 250 AD2d 503, *lv denied* 92 NY2d 906; *People v Williams*, 238 AD2d 191, 192, *affd* 92 NY2d 993). Finally, it has been observed that "the issue of

whether the prosecutor intended to discriminate is a question of fact which must be resolved in the first instance by the trial court" (*People v Durant*, 250 AD2d 698, 699, *lv denied* 92 NY2d 879). Even where the court has completed the third step of the *Batson* protocol, inquiry is subsequently obviated "upon a determination that no facts and circumstances sufficient to raise an inference of discrimination had been shown" (*id.*).

As to the speedy trial issue, the record supports the exclusion of the period of time during which the apprehending officer was disabled. The hearing court noted that the officer wore "a rather large, complicated and cumbersome cast" extending "from the wrist all the way up to the shoulder" as the result of a ruptured biceps tendon. The officer was on disability leave from May 12, 1998 until his return to duty on November 8. The court was correct in its conclusion that the unavailability of a principal witness falls within the "exceptional circumstances" exclusion of CPL 30.30 (4) (g) (*People v Goodman*, 41 NY2d 888), which extends to a witness who is expected to be called to offer testimony critical to "establishing the chain of custody of crucial physical evidence" (*People v Womack*, 229 AD2d 304, *affd* 90 NY2d 974). The large and cumbersome cast in which the officer's right arm was encased constitutes "a sufficiently restricting injury to qualify the People's witness as medically unable to testify" (*People v Celestino*, 201 AD2d 91, 95). Concur—Sullivan, P. J., Rosenberger, Mazzarelli, Rubin and Buckley, JJ.