(September 21, 2004)

■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v CHRIS CLAUDIO, Appellant. [782 NYS2d 28]—

Judgment, Supreme Court, New York County (Leslie Crocker Snyder, J.), rendered October 15, 1992, which convicted defendant, after a jury trial, of attempted murder in the second degree, conspiracy in the second degree and criminal possession of a weapon in the second degree, and imposed sentence thereon, unanimously reversed, on the law, and the matter remanded for a new trial.

This appeal involves the procedure for determining whether peremptory challenges were used to exclude potential jurors on account of race (see Batson v Kentucky, 476 US 79 [1986]). Defendant claims that, among other things, the trial court failed to follow the three-step Batson protocol and thus committed reversible error.

During jury selection, the People exercised peremptory challenges to 6 of the first 12 prospective jurors, 2 of whom were Hispanic. When defense counsel called the court's attention "as an alert" to a potential Batson issue, the court replied that the challenged jurors would not be excused at that point. The prosecutor stated that she was "prepared" to address the issue. Thereafter, both the prosecutor and defense counsel continued questioning the panel, each exercising peremptory challenges to 19 prospective jurors. By this point, 10 jurors had been seated. No prospective jurors had been challenged for cause by either side.

The court then entertained challenges to the next two prospective jurors. Again, no challenges for cause were made. However, the People exercised a peremptory challenge against another Hispanic juror. At this point, defense counsel specifically raised a *Batson* challenge on the basis that the only three potential jurors of Hispanic origin were challenged by the prosecutor. Without addressing whether defense counsel had made a prima facie showing of discrimination, the court asked the prosecutor for an explanation of each challenged juror in question.

The prosecutor stated that she challenged both female Hispanics because they were secretaries. She used the same language as to both in stating that she exercised her peremptory challenges against each because "I didn't get a strong feeling for her one way or the other." As for the male Hispanic, the prosecutor stated: "I felt that his roots in the community—I didn't get a strong feel whether he had the roots in the community. And therefore he wasn't very verbal. I felt—I didn't get a very strong impression of him one way or the other. That is my challenge to him." She concluded by asserting "It is clear that there is no pattern." The defense counsel noted that the prosecutor had challenged all Hispanics and argued that the submitted reasons were pretextual. He pointed out that all three jurors had lived in the community for a significant number of years and had the same employment during that period. Counsel further argued that, although the prosecutor claimed she challenged the female Hispanics because they were secretaries and she did not want secretaries on the jury, a non-Hispanic secretary was selected and seated on the jury.

The court, after observing that peremptory challenges are exercised "primarily on instinct," stated that she did "not believe there is any intended pattern made out by the prosecutor." However, the court went on to state since the prosecutor "has struck all three Hispanics who have been in issue thus far, I am striking her challenge to Ms. Arroyo and setting [*sic*] Ms. Arroyo on the jury. As to the other two challenges I am not. I feel this is a fair exercise of attempting to avoid any kind of racially motivated peremptory challenge . . . I think this is a fair exercise of resolving the issue."

Defendant argues that the court committed error when it specifically refused to make a finding as to whether the prosecutor's explanation for exercising the challenges in question were pretextual while allowing two of the prosecutor's peremptory challenges to stand. He further argues that the court did not follow the three-step analysis required under *Batson*.

While there is no ritualistic language which a court must use in ruling on a *Batson* challenge, there are substantive principles which must be satisfied (*People v Davis*, 253 AD2d 634 [1998]). Moreover, these principles must be supported by an adequate record (*People v Glenn*, 7 AD3d 314 [2004]). To be sustainable, *Batson* analysis requires the court to examine three issues, namely: "(1) has a prima facie showing been made that challenges have been exercised based on race; if so, (2) has a race-neutral explanation been tendered; and, (3) has defendant nonetheless proven purposeful discrimination" (*People v Jones*, 284 AD2d 46, 47 [2001], *affd* 99 NY2d 264 [2002], citing *People v Childress*, 81 NY2d 263, 266 [1993]). These issues must be addressed seriatim to avoid committing reversible error (*People v Lopez*, 284 AD2d 115 [2001], *lv denied* 97 NY2d 642 [2001]).

In the case before us, the defendant made a prima facie showing of discrimination based upon the prosecutor's challenges of all Hispanic jurors to that point. Although the court did not make a specific ruling as to whether counsel met his burden as to the first step of the process, the court asked the prosecutor for comment. The burden shifted to the prosecutor to advance "race-neutral" explanations for the challenges. The court found that the explanations offered were "rational reasons" and not "race-neutral reasons" as required by *Batson*. The record is clear that the prosecutor met her step-two burden of overcoming the inference of discrimination (*People v James*, 99 NY2d 264, 270 [2002]). "The second step . . . does not demand an explanation that is persuasive, or even plausible . . . Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral" (*Purkett v Elem*, 514 US 765, 767-768 [1995]).

The crux of this case lies in the third step of the *Batson* inquiry. That step requires the court to make the ultimate determination on the issue of discriminatory intent. The prosecutor's explanations as to the basis for the challenges must be examined as to their credibility. A court "bear[s] the judicial responsibility of ensuring that an adequate record is made and of reflecting the basis for [its] rulings" (*People v Payne*, 88 NY2d 172, 184 [1996]).

In the case before us, the court made a series of errors. Initially, by stating that it did "not believe there is any intended pattern made out by the prosecutor," it is unclear whether the court made a finding that defendant did not meet his burden of going forward and demonstrating a prima facie case of discrimination under step one of the *Batson* analysis. If that were the case, the inquiry should have stopped there. However, this issue

became moot once the People were required to state their reasons for the challenges. The court determined to "fairly resolve the issue for both sides" by seating one of the challenged jurors without making a determination as to the credibility of the prosecutor's explanation. In effect, the court impermissibly merged steps two and three together. However, "the Batson procedure effectuates its purpose only if the steps are followed in sequence" (*People v Smocum*, 99 NY2d 418, 422 [2003]). The failure to make a factual finding as to the credibility of the prosecutor's explanations "without first allowing defense counsel to make an argument that the reasons were pretextual . . . falls short of a 'meaningful inquiry into the question of discrimination' " (*People v Smocum*, 99 NY2d at 423).

To compound the error, the court then went on to seat one challenged juror but not the other two without making any factual findings for its decision. This apparently arbitrary procedure was clearly outside the *Batson* protocol and affords us no basis on which to determine whether the court found the prosecutor's explanation as to that juror to be pretextual or not. For example, the assertion that one of the challenged jurors was not particularly verbal would be a race-neutral reason to support a challenge (*see People v Antonio*, 276 AD2d 431 [2000], *lv denied* 96 NY2d 756 [2001]). However, in the context of this case, that assertion was made almost as an afterthought in conjunction with a claim of lack of community roots, which was factually contradicted by the defense counsel. The court's failure to make factual findings is particularly significant since we have repeatedly held that the language used by the prosecutor here to explain her challenges is "the type of vague, nonspecific and, thus, highly suspicious reason that we have previously held leads to an inescapable inference of discriminatory motive" (*People v Carillo*, 9 AD3d 333, 334 [2004]; *see People v Jackson*, 213 AD2d 335, 336 [1995], *appeal dismissed* 86 NY2d 860 [1995]).

In short, the failure to follow the three-step procedure laid out in *Batson* mandates a reversal of the conviction.

While a remand for further findings is generally the appropriate course where a trial court has failed to complete the third step in *Batson* (*see People v Payne*, 88 NY2d 172, 186 [1996]), such a remand is not practicable here. The justice who presided over the voir dire is no longer on the bench and over 11 years have passed since the trial of this matter.

Accordingly, the matter is remanded for a new trial. Concur— Saxe, J.P., Ellerin, Williams, Lerner and Sweeny, JJ.