■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ARTURO PEREZ, Appellant. [829 NYS2d 61]—

Judgment, Supreme Court, New York County (Budd G. Goodman, J., on motion; Rena K. Uviller, J., at trial and sentence), rendered November 17, 2004, convicting defendant, after a jury trial, of one count of robbery in the second degree, three counts of grand larceny in the fourth degree, and two counts of criminal possession of stolen property in the fourth degree, and sentencing him, as a second felony offender, to concurrent prison terms of 10 years on the robbery conviction and 2 to 4 years on the remaining convictions, unanimously reversed, on the law, and the matter remanded for a new trial.

The motion court properly denied defendant's request for a *Dunaway/Mapp* hearing, since he failed to proffer sworn allegations of fact raising issues concerning the factual allegations contained in the felony complaint, voluntary disclosure form, and indictment that the police arrested him based upon the complainant's in-person report and spontaneous identification of him during a canvass of the neighborhood, and that the physical evidence was recovered as a result of a search incident to that arrest (*see People v Mack*, 281 AD2d 194 [2001], *lv denied* 96 NY2d 903 [2001]).

At the conclusion of the second round of jury selection, counsel for codefendant Hector Morrero raised "a *Batson* challenge as to juror number five," a black male. Counsel for defendant immediately recounted that the prosecutor had exercised three peremptory challenges in the first round, all against black women, and two in the second round, one to strike a black male and the other against an Hispanic male, thereby leaving no

blacks on the panel. Since the prosecutor had used 80% of his peremptory challenges to completely exclude blacks from the panel, counsel argued that "there's a pattern going on," and there did not "appear to be any race neutral reasons for the prosecution to have exercised these challenges against these four African-Americans." Counsel requested that the court "first find that there has been a prima facie showing of the systematic exclusion of blacks, and secondly, . . . ask the People to provide race neutral reasons for excluding these people." If the People's answers were unsatisfactory, counsel asked, as a remedy, for "the court to find those jurors . . . and seat them."

The court stated: "in the first round three African-Americans were challenged, and those were the only three challenges by the People," and in the next round "there was a challenge to the one African-American man, and then to an Hispanic man, which I don't think is part of a pattern, but I do see a pattern, and this challenge only goes to Mr. White. But in order to determine whether he should be seated, I will ask [the prosecutor] for a race neutral explanation for all of these challenges."

With respect to prospective juror Pearman, the prosecutor stated that he had originally tried to challenge her for cause, because "at one point she said that she would not be able to convict on a one witness case," although the court had "rehabilitated her."

Prospective juror Mumford had previously served on a jury in a criminal case that was unable to reach a verdict, and also "was involved in some domestic violence issue which she never reported to the police," which indicated to the prosecutor that she believed crimes should not be "handled by the court."

The prosecutor recalled that prospective juror Mehertu had been the victim of the theft of her wallet and of credit card fraud, but could not remember why he had challenged her.

Finally, the prosecutor asserted that prospective juror White did not "appear to be very assertive" or to "articulate his beliefs and positions," but rather was "quiet" and "almost withdrawn," and therefore might "not stick to what [he] believe[d] and might be easily convinced by some of the other jurors to do what everybody else is doing."

The court determined that the prosecutor had advanced a nonpretextual race-neutral explanation only as to Mumford, in that there is an understandable "hesitation" to empanel someone who has previously been on a hung jury. The court disagreed with the prosecutor's assessment of Pearman, whom the court believed at first misunderstood a question, but upon clarification gave an assurance that she had no philosophical or

religious opposition to a one-witness case. Similarly, the court did not think White was any more soft spoken than some of the other jurors whom the prosecutor had not sought to challenge. The court rejected the reason given as to Mehertu.

The court ruled that White would be seated on the jury. Counsel for defendant asked the court to try to locate Pearman and Mehertu, who had been struck the previous day, and to reseat them as well. However, the court stated that "[n]o *Batson* challenge was made with regard to them," but only as to White, and in any event they were probably "long gone." According to the court, the *Batson* "challenge was not made to them originally," since "[t]he pattern was only raised in this round." Counsel for the codefendant then joined defendant's *Batson* motion and took exception to the court's refusal to try to locate Pearman and Mehertu. Counsel for defendant moved for a mistrial, which the court denied.

Contrary to the People's assertions, defendant's *Batson* arguments are preserved for appellate review. Although the codefendant initially raised a *Batson* challenge only with respect to Mr. White, defendant requested that the court inquire of the prosecutor as to all four peremptorily challenged black prospective jurors and reseat all four of them, and therefore clearly made a *Batson* application as to all four. The court apparently misinterpreted the *Batson* challenge as pertaining only to Mr. White, but nevertheless asked the prosecutor to provide race-neutral reasons for all four prospective jurors. The fact that defendant did not interject a clarification at that point did not constitute a waiver, and the People do not suggest that they would have given different explanations had defendant done so. Moreover, after the court found the People's responses inadequate as to White, Pearman and Mehertu, and seated White, defendant asked that the other two be seated as well. The court's reply, that "the pattern was only raised in this round," indicates that the court operated under the view that a *Batson* application with respect to a particular juror must be raised in the round that the juror is questioned and not in a subsequent round. However, a *Batson* claim can be raised at any time during the jury selection process (*see People v Butler*, 15 AD3d 415 [2005], *lv denied* 4 NY3d 884 [2005]). Defendant's claim was therefore timely. Furthermore, after the court ruled, the codefendant "join[ed] in defense's application for the *Batson* challenge," i.e., as to all four of the jurors, not just White, and took an exception to the court's ruling, and defendant moved for a mistrial. Thus, the record does not support the People's assertion that "defendant did nothing whatsoever," but rather

demonstrates that defendant took every opportunity to make known his position and object to the court's ruling.

Great deference is to be accorded the trial court's determination of whether the People's *Batson* explanations are nonpretextual (*see People v Sutherland*, 219 AD2d 523, 524 [1995], *lv denied* 88 NY2d 886 [1996]), and we decline to disturb the court's findings in the instant case. Even if the People had offered nonpretextual explanations as to White and Pearman, the prosecutor did not give any reason as to Mehertu, and therefore failed to overcome the inference of discrimination (*see People v Allen*, 86 NY2d 101, 109 [1995]). The People's speculations on appeal as to why the prosecutor might have wished to strike Mehertu are not preserved for review (*see People v Walker*, 306 AD2d 56 [2003], *lv denied* 100 NY2d 600 [2003]).

Since defendant established *Batson* violations as to two released jurors, the court should have attempted to locate them, or given defendant additional peremptory challenges, or fashioned some other remedy (*see People v Chin*, 3 AD3d 574 [2004], *lv denied* 2 NY3d 761 [2004]; *People v Frye*, 191 AD2d 581 [1993], *lv denied* 81 NY2d 1014 [1993]).

Accordingly, the judgment is reversed, and the matter remanded for a new trial. Concur—Mazzarelli, J.P., Marlow, Sullivan, Buckley and Gonzalez, JJ.