People v Luke (2025 NY Slip Op 00297)

People v Luke

2025 NY Slip Op 00297

Decided on January 21, 2025

Appellate Division, First Department

PITT-BURKE, J. 

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: January 21, 2025
SUPREME COURT, APPELLATE DIVISION
First Judicial Department

Troy K. Webber
Peter H. Moulton Saliann Scarpulla Julio Rodriguez III Bahaati E. Pitt-Burke

Index No. 4233/17 Appeal No. 2727 Case No. 2019-5240 

[*1]People of the State of New York, Respondent,
v
Damone Luke, Defendant-Appellant.

Defendant appeals from a judgment of the Supreme Court, New York County (Curtis Farber, J.), rendered April 3, 2019, convicting him, after a jury trial, of burglary in the third degree and sentencing him to 2½ to 5 years in prison.

Twyla Carter, The Legal Aid Society, New York (Mariel R. Stein of counsel), for appellant.
Alvin L. Bragg, Jr., District Attorney, New York (Catherine Marotta and Alan Gadlin of counsel), for respondent.

PITT-BURKE, J. 

The United States Supreme Court has stressed that even a single instance of race discrimination against a prospective juror is impermissible (see Batson v Kentucky, 476 US 79 [1986]; see also Flowers v Mississippi, 588 US 284 [2019]). Thus, trial courts are tasked with enforcing Batson to ensure that racial discrimination does not seep into the jury selection process. This Court has exercised its interest of justice jurisdiction to review unpreserved Batson claims where a trial court combines steps of the Batson inquiry. However, this appeal presents an interesting set of circumstances because the trial court bypassed the Batson framework in its entirety, focusing on the proposed remedy available to defendant as the determinative factor of the inquiry. The trial court's departure effectively deprived defendant of a meaningful inquiry into the question of discrimination, implicit or otherwise, and stands in direct contradiction to the fundamental precepts underlying Batson: preventing courts from becoming vehicles for discrimination in the jury selection process. Therefore, we review defendant's claim in the interest of justice (see People v Watson, 141 AD3d 23, 27 [1st Dept 2016]) and remand to Supreme Court for further proceedings as are necessary to satisfy the requirements of Batson.
Background
The facts of this matter are largely uncontested. During round one of jury selection at defendant's 2017 trial, the prosecution utilized four peremptory strikes on jurors 1, 3, 8, and 12. At the conclusion of this round, defense counsel raised a Batson challenge, stating:
"With respect to the jury selection, in just reviewing the People's peremptory challenges, of the four, three were African American or black, one was a Hispanic woman, or what appeared to be a Hispanic woman. I just wanted to inquire about that fact."
Without commenting on whether defendant had satisfied his prima facie burden at step one, the court immediately posited that it recognized the pattern highlighted by defense counsel. Before deciding whether a prima facie case of discrimination had been established, the court found the objection untimely because defense counsel did not raise it when the prosecution exercised the peremptory challenges and the four jurors in question had been excused.
Despite the court's ruling, defense counsel continued to argue that the objection was timely. The court reiterated its determination but adjourned for the day for all parties to further research the timeliness of the objection. The court informed [*2]the prosecution to be ready to provide explanations for the peremptory strikes at the next appearance, and the prosecution responded that it was prepared to provide facially neutral explanations to the court at that time. The court declined and adjourned to the next day.
Prior to the commencement of the second round of voir dire, the court reiterated its position that defense counsel's objection was untimely and engaged in an extensive colloquy with the parties on the issue. Defense counsel responded, advising the court that case law indicated that a Batson challenge could be raised at any time before the commencement of trial and therefore its challenge was timely. The court responded, "[i]f I agree with you, what would I be able to do? I can't reseat those jurors, they're gone. That's why you have to make the objection at a certain time."
The prosecution interjected, conceding the timeliness of defendant's objection, and again offered to place its race neutral reasonings on the record. Notwithstanding the prosecution's offer, the court neglected to address, acknowledge, or allow them to do so.[FN1] Instead, the court asked defense counsel for their proposed "remedy now that [it didn't] have the opportunity to reseat the jurors, if in fact [defense counsel was] correct." The following exchange ensued:
Defense Counsel: You've told me now that these jurors are excused. So I can't ask you to bring them back. I think at this time it doesn't sound like there is a particular remedy that you can provide.
The Court: Will you be asking for me to declare a mistrial?
Defense Counsel: I'm not asking for that.
The Court: What is the other alternative?
Defense Counsel: At the time that we made the challenge —
The Court: They were excused already. They were gone.
Defense Counsel: But presumably still coming back on Friday.
The Court: No, they were gone.
Defense Counsel: I understand that now. I'm not arguing with you about that. At the time that we made the challenge, I understood that they were dismissed from the courtroom. I did not know they weren't coming back today. . . .
The Court: There has to be a time to make the challenge so I could address it right or wrong. Other than declare a mistrial at this stage, what else can I do? I'm not making a ruling that there is grounds for a Batson challenge, but assuming there was, what am I going to do, except declare a mistrial?
Defense Counsel: Right, as I said before —
The Court: If you're telling me you're not asking for a mistrial, then what? What are you asking for now?
Defense Counsel: Well, now, if there is nothing to do to remedy it, then I'm not asking for anything at this time. I'm not asking for a mistrial. You mentioned something about going forward paying attention to the panel, that's fine. I'm not asking for a mistrial at this time. So I don't have — I'm not asking for anything right [*3]now.
The Court:In light of your expressed desire for the Court not to issue a mistrial ruling, you're not asking for any other relief, then this becomes moot. We'll move on. Pay attention to the next round.
Despite virtually conceding defense counsel's objection as timely, the trial court did not determine whether defendant met his prima facie burden at step one. Nor did the court proceed to step two, allowing the prosecution to place a neutral reason on the record for the court to determine whether the prosecution's explanation was pretextual. Instead, the court erroneously focused on the available relief, circumventing the Batson protocol in its entirety. Ultimately, defendant was convicted after a jury trial of burglary in the third degree and sentenced to 2½ to 5 years in prison.
On appeal, defendant contends that the trial court erred by claiming that his Batson objection was untimely and finding that there was no possible remedy for the violation because the struck jurors were sent home. Specifically, he contends that it was an error for the court to prevent the Batson challenge from proceeding and not allowing the prosecution to place their race-neutral explanations on the record. He further argues that the trial court failed to properly respond to the Batson challenge by deciding that the inquiry could not go forward because defense counsel would not ask for a mistrial and the court was unaware of any other proper remedies.
In response, the prosecution concedes that defendant's Batson challenge was timely but contends that his argument is unpreserved and forfeited because he expressly declined to seek any relief and agreed to the court's proposed remedy of simply monitoring further jury selection. The prosecution does not dispute that additional remedies existed at the time of defendant's timely objection. However, it asserts that defendant cannot now suggest that the trial court should have dispensed those additional forms of relief since defendant never requested them.
Discussion
Even if we were to agree that defendant's claim is unpreserved, we find that the trial court's errors here were critical, and not merely a case of putting the proverbial cart before the horse (see People v Scott, 70 NY2d 420, 425 [1987]). The trial court's actions, whether intentional or not, sidestepped the entire Batson protocol.
This Court's recent precedent has been to exercise its interest of justice jurisdiction to correct unpreserved Batson errors where a trial court has substantially deviated from the Batson protocol. For example, in People v Watson (141 AD3d at 27, 30), this Court held that when steps two and three of a Batson inquiry are improperly merged, it warrants review in the interest of justice. Similarly, in People v Julio (219 AD3d 415, 416 [1st Dept 2023]), this Court held that when a court improperly limits the Batson inquiry, denying parties an opportunity to present their full challenge, it also warrants review [*4]in the interest of justice. Here, the trial court did not merely merge the steps of Batson. It bypassed the protocol entirely by interjecting itself into defendant's Batson objection, misapprehending its timeliness, improperly focusing on potential relief, and denying defendant an opportunity to present his full challenge (id.). Therefore, we review defendant's claim in the interest of justice (see Watson, 141 AD3d at 27).
As in the above cases, the result here could be that defendant was denied the opportunity to have a fair jury seated simply because the trial court misapprehended the Batson framework and the procedural posture in which such an inquiry can be made. Importantly, there is no ambiguity on this point. The trial court stated on the record that it was "not making a ruling that there is grounds for a Batson challenge, but assuming there was, what am I going to do, except declare a mistrial?"
To give context to the trial court's errors, it is important to understand not only the underpinnings of the United States Supreme Court's decision in Batson, but the steps the trial court bypassed by improperly focusing on defendant's potential relief and not whether a sufficient Batson challenge lies here.
Batson established a three-step test for determining whether peremptory strikes are based on invidious discrimination (see Batson, 476 US at 96-97; People v Bolling, 79 NY2d 317, 320-321 [1992]). Invariably, courts, as arbiters of the law, are tasked with enforcing the Batson framework, at every step of the process (see Flowers v Mississippi, 588 US at 302 ["[T]he job of enforcing Batson rests first and foremost with trial judges"]). At step one, the party raising a Batson challenge must establish a prima facie case of racial discrimination in a manner that allows the judge to infer discriminatory purpose (see People v Brown, 97 NY2d 500, 507 [2002]).[FN2] Once a prima facie case of discrimination has been established, the burden shifts, and at step two, the nonmovant is to provide racially neutral explanations for the challenges (Bolling, 79 NY2d at 320). At step three, the burden shifts back to the movant to prove purposeful discrimination or that the proffered reasons are merely a pretext for intentional discrimination (see People v Kern, 75 NY2d 638, 649 [1990], cert denied 498 US 824 [1990]). Then the court determines if the nonmovants race-neutral explanations were sufficient (id.).
The Court of Appeals has cautioned trial courts against exercising "undue haste" in deciding Batson objections as doing so falls short of the "meaningful inquiry into the question of discrimination" that Batson requires (see People v Smocum, 99 NY2d 418, 423 [2003] [internal quotation marks omitted]). More recently, the Court made it abundantly clear that a departure from the essential protocol of Batson is "an error of the highest order" (see People v Estwick, 42 NY3d 92, 95 [2024] [holding that the trial courts interjection into the Batson process "deprived [*5]defendant of any meaningful way to demonstrate pretext"]). Thus, the three distinct steps of the Batson framework are not to be skipped, merged, or, as in this case, completely disregarded (see People v Payne, 88 NY2d 172, 186 [1996]; see also People v Jones, 284 AD2d 46, 48 [1st Dept 2001], affd 99 NY2d 264 [2002]).
Crucially, here we are not faced with a circumstance in which the trial court erroneously concluded that defendant did not meet his prima facie burden at step one (see People v Bridgeforth, 28 NY3d 567, 575-576 [2016]). In fact, as noted above, the trial court took notice of the preemptory challenges implemented by the prosecution.
This is also not a circumstance in which the court deviated from the Batson protocol by improperly combining steps two and three (Payne, 88 NY2d at 186). Rather, we are faced with a circumstance where the trial court failed to provide any inquiry into the question of discrimination by circumventing all three steps of the Batson protocol.
As the dissent concedes, the trial court should have proceeded to step one of Batson rather than focusing on the remedies. Doing so would not merely be "better" as the dissent posits. It is essential to the Batson framework.
Despite the dissent's attempts to minimize the trial court's errors, its deviation from the Batson protocol is an outlier in Batson precedent—a total abandonment of the steps rather than a misapplication (see Payne, 88 NY2d at 186; see also Jones, 284 AD2d at 48). Therefore, there is no precedent analogous to the facts here.
When looking to cases dealing with less egregious Batson violations, it has been repeatedly held that a trial court's misapplication of Batson protocol is grounds for reversal or remand (see e.g. Payne, 88 NY2d 172 [remitting to trial court due to the merger of steps two and three of the Batson protocol]; Jones, 284 AD2d at 51; Julio, 219 AD3d 415; People v Frazier, 125 AD3d 449 [1st Dept 2015]; Watson, 141 AD3d 23; People v Claudio, 10 AD3d 531 [1st Dept 2004], lv denied 4 NY3d 829 [2005]).
This Court's reasoning in People v Claudio provides guidance here.[FN3] In Claudio (10 AD3d at 533), the trial court, without making a finding regarding step one, improperly instructed the prosecution to put forth explanations for its use of the challenges as required under step two. After the prosecution put forth its reasoning, the trial court came to a resolution without making a factual finding or proceeding to step three (id.). This Court held that the trial court's failure to comply with the Batson procedure was improper and required a reversal of the conviction (id.).
While the dissent contends that Claudio is inapposite because the court here did not curtail, refuse to entertain defendant's application or impose its own type of Batson compromise, its characterization of the facts here is an oversimplification. As the dissent concedes, in Claudio this Court held that the arbitrary procedure employed by the trial court was clearly [*6]outside the Batson protocol and afforded no basis on which to determine whether the court found the prosecutor's explanation as to that juror to be pretextual or not.
Here, the trial court enacted an arbitrary procedure that focused on the remedy and failed to address whether defendant had established a prima facie showing of discrimination or whether the prosecution's explanation was pretextual. Because we do not discern any malice in the trial court's error, here, as in Claudio, the arbitrary procedure employed by the trial court functionally bypassed the Batson protocol and afforded no basis on which to determine whether the court found defendant met his prima facie burden or whether it found the prosecutor's explanation pretextual. The court's error here is similar in effect to the conduct found in Claudio and in the other cases noted above where this Court remanded for further proceedings. If this error is left unchecked, Batson and its progeny become a metaphorical dog with no bite.
The dissent's further contention that the trial court accepted defendant's Batson challenge and "[w]hile not making a formal step by step determination, it specifically stated that based upon counsel's statements, it would consider the appropriate remedy proposed by counsel, including a mistrial" also misses the mark. Even if we were to agree with the dissent, in that the trial court stated that it would consider the appropriate remedies proposed by defense counsel based solely upon counsel's statement, this argument highlights not only the arbitrary nature of the trial courts actions but also the extent of the court's error. Considering the appropriate remedy before the prosecution was allowed to proffer its race neutral reasonings on the record is a violation of Batson similar to that found in Claudio. It is also contrary to this Court's precedent in Batson cases and the Court of Appeals' finding that the three distinct steps are not to be skipped, merged, and never disregarded (Payne, 88 NY2d at 186; Jones, 284 AD2d at 48).
Contrary to the dissent's contention, People v McLeod (281 AD2d 325 [1st Dept 2001], lv denied 96 NY2d 904 [2001]) is not instructive on this Courts use of interest of justice jurisdiction as the facts here are readily distinguishable. In McLeod, after the defendant raised a Batson objection the court proceeded through steps one and two of the Batson inquiry (id. at 326). The court then imposed a common procedure followed when making Batson determinations, agreement to monitor the parties' use of peremptory strikes, then making a determination (id.). Here, the court skipped the procedure in its entirety and focused on the remedy available "if" it were to follow the Batson procedure and make a determination.
While the dissent posits that courts in concurrent jurisdictions similarly conclude that Batson claims must be preserved, the cases cited are also readily distinguishable. In People v Rosado (166 AD2d 544, 545 [2d Dept 1990], lv denied [*7]77 NY2d 843 [1991]), the defendant failed to make a formal Batson objection for the court to make a determination. Here, whether defendant made an objection is not disputed by the parties. In People v Butler (15 AD3d 415, 415 [2d Dept 2005], lv denied 4 NY3d 884 [2005]), the defendant raised a Batson objection in round three regarding the use of peremptory strikes in round two. Here, defendant raised his Batson objection at the end of round one. In People v Williams (260 AD2d 651 [2d Dept 1999], lv denied 93 NY2d 1007 [1999]), the court declined to exercise its interest of justice jurisdiction because an incomplete record precluded it from determining whether a prima facie showing of discrimination was made out. Here, the record does not preclude this Court from exercising its interest of justice jurisdiction. Rather, it makes it remarkably clear that the court intervened while defendant was attempting to establish his prima facie burden.
The dissent's assertion that reaching defendant's unpreserved Batson claims contravenes this Court's precedent is also incorrect. This court has reached unpreserved Batson claims through its interest of justice jurisdiction when the underlying Batson claim was believed to have merit, as it does here (see Watson, 141 AD3d at 27; Julio, 219 AD3d at 416). As this Court stated in Watson (141 AD3d at 27), to circumscribe our unique interest of justice jurisdiction "would be to deny a defendant the opportunity to have a fair jury seated merely because his or her counsel," and in this case the court, "misapprehends the Batson three-step inquiry."
Turning to the merits of defendant's application, it cannot be said that he fails to meet the prima facie burden required for step one of a Batson inquiry. As noted above, the trial court interjected into defendant's Batson objection, denying him the opportunity to fully present his challenge (see Julio, 219 AD3d at 416). Case law also establishes that statistical data can be used to make a prima facie showing of discrimination at step one of a Batson inquiry (see Bolling, 79 NY2d at 323-325; People v Hawthorne, 80 NY2d 873, 874 [1992], cert denied 81 NY2d 804 [1993] [holding that the defendant met his prima facie burden under step one when he alerted the court that the prosecution used peremptory strikes on four of the six African American members of the venire]; Bridgeforth, 28 NY3d at 575-576 [holding that a defendant met the prima facie burden at step one when they argued that the prosecution used five of its peremptory strikes to exclude seemingly Black women]).
In those cases when statistical data has been deemed insufficient, the facts are readily distinguishable from the facts here. For example, in People v Brown (97 NY2d at 508), the Court of Appeals found that statistical data was insufficient because four of the seven sworn jurors were African American, and the trial court allowed for the colloquy to continue beyond the initial assertion. Here, by contrast, defendant's [*8]Batson inquiry was derailed by the court, and only two of the eight sworn jurors were African American while three of the four strikes used were panelists of African American descent.[FN4]
Additionally, defendant's failure to propose alternative remedies is not dispositive because the trial court's focus on the remedy available prior to making a pretext determination usurped the intended purpose of Batson. The trial court's errors are exacerbated by its misapprehension that mistrial was the sole remedy available to defendant.
When a Batson challenge is successful there are several remedies available to a party outside of a mistrial. By way of example, the offender could forfeit its peremptory challenges, or the court could award more peremptory challenges to the non-offender (see People v Luciano, 10 NY3d 499, 503 [2008]; see also People v Perez, 37 AD3d 152, 155 [1st Dept 2007]). This Court has also held that a trial court could attempt to locate the otherwise released jurors as a viable remedy (Perez, 37 AD2d at 155 ["Since defendant established Batson violations as to two released jurors, the court should have attempted to locate them, or given defendant additional peremptory challenges, or fashioned some other remedy"]). Contrary to the trial court's assertion, the timing of defendant's Batson objection did not foreclose any of these remedies (id.). While the dissent implicitly concedes this fact, it focuses on defendant's failure to request a remedy as the dispositive factor of this Court's inquiry. However, the dissent's focus circumvents the fact that defendant's request should not occur until the court makes a determination on the challenge—the precise action the trial court here improperly circumvented.
The Batson procedure was created to prevent courts from becoming vehicles for discrimination (see People v Childress, 81 NY2d 263, 267 [1993]). Since its enactment, courts have acted as arbiters of the law and procedure Batson put in place (see Kern, 75 NY2d 638; Hecker, 15 NY3d 625; Brown, 97 NY2d 500). What is clear from the record before this Court is the inquiry deployed here falls short of the meaningful inquiry Batson requires (see Smocum, 99 NY2d at 423). Batson plays an important role in bolstering "public confidence in the fairness of our system of justice"(Batson, 476 US at 87). Contrary to the dissent's contention, the trial court's actions, and ultimate circumvention of process, cannot be categorized as mere harmless error.
Accordingly, the appeal from the judgment of the Supreme Court, New York County (Curtis Farber, J.), rendered April 3, 2019, convicting defendant after a jury trial, of burglary in the third degree and sentencing him to 2½ to 5 years in prison should be held in abeyance and the matter remanded to Supreme Court for further proceedings as are necessary to satisfy the requirements of Batson v Kentucky.
All concur except Webber J.P. and Scarpulla J., who dissent in an Opinion by Webber J.P.

WEBBER[*9], J.P. (dissenting)
I respectfully dissent. In my opinion, defendant's Batson challenge claim is unpreserved, and interest of justice review is unwarranted.
Factual Background
On March 7, 2019, the first round of voir dire was conducted. Twenty-four prospective jurors were questioned. From the first twelve, the People used four peremptory challenges: prospective juror seat 1, prospective juror seat 3, prospective juror seat 8, and prospective juror seat 12. Defense counsel exercised five peremptory challenges. The People made no more peremptory challenges that round, and defendant exercised six additional challenges. Eight individuals were then sworn in as jurors. When called upon by the court, defense counsel confirmed that they were "satisfactory to the defense." The defense made no reference or statement as to the race of the struck jurors or that a Batson violation had occurred.
According to the transcript, the judge thanked those jurors who had been questioned but not selected for jury service and excused them from further jury service. He then stated that those jurors who had not yet been questioned would be directed where to report the next day for continuation of the jury selection process.
After the sworn jurors exited the courtroom, defense counsel stated, "[I]n just reviewing the People's peremptory challenges, of the four, three were African American or black, one was a Hispanic woman, or what appeared to be a Hispanic woman. I just wanted to inquire about that fact." The court responded, "I noticed it, but you didn't raise it at the time when it would have been helpful," and at a "time [that] would have allowed me to address it." The judge emphasized that he had "excused the jurors," that "[t]hose who have been stricken have been excused, and sent home," and that "[t]heir service is complete." He noted that he did not know how he could undo that and stated that defense counsel was "supposed to raise [the challenge] when he exercised his peremptories."
The People pointed out that two African American jurors were seated, and that they had not used peremptory challenges on them. According to the transcript, the judge stated that he believed that defendant's "initial objection was untimely," because it was not raised when he could "have cured a problem," and did not know "what the remedy is now." However, he directed the People to "be prepared" to explain their reasoning for the peremptory challenges "on the chance that it's required." Although the People noted that they were "prepared right now," the court adjourned for the day.
The next day, the judge reiterated his position that counsel's objection was "untimely." He explained that a Batson challenge should be made "at a time" when he could "correct a situation and recall or receive a juror who had been excused," but noted that counsel's objection was "too late" because the excused jurors had been told their service was complete.
Counsel responded that a Batson challenge [*10]may be raised "even after the specific round of voir dire has ended or jury selection has been completed." While acknowledging that he could look back to the first round to "consider the challenges going forward," the judge stated that he could not "reseat those jurors" as they had been "excused and released."
The judge then inquired of the defense what remedy she was seeking. Counsel acknowledged that there was not a "particular remedy" that the court could provide at that time. The court then asked if counsel would be requesting a mistrial, but counsel replied, "I'm not asking for that." The judge stated that while "I'm not making a ruling that there [are] grounds for a Batson challenge," if there were such grounds, "what am I going to do, except declare a mistrial?" While counsel reiterated, "I'm not asking for a mistrial," there was no statement as to what the request was. Indeed, counsel stated that the defense was not "asking for anything right now" and was "fine" with the court paying attention to the panel "going forward."
Out of the presence of defendant, the court stated on the record that the issue was "moot," given counsel's "expressed desire for the [c]ourt not to issue a mistrial ruling" and that counsel was not requesting "any other relief." When defendant was brought to the courtroom, the court apprised him that the "normal" remedy for a Batson violation would be to reseat the jurors, but as the jurors had already been sent home, this could not be done. The court informed defendant that it had asked his counsel what other remedy she proposed, and that counsel expressly stated that she did not want a mistrial. Defense counsel did not object to the court's characterization that the issue was moot; did not state any additional factors indicating that the prosecutor struck prospective jurors in a discriminatory fashion; or ask for the prosecutor to place his facially neutral explanations on the record.
Notably, defendant had the opportunity to renew his Batson challenge during the next round of jury selection and refrained from doing so. Discussion
The majority correctly points out that a three-step process is used to evaluate a Batson application (Batson v Kentucky, 476 US 79, 96-98 [1986]; People v Payne, 88 NY2d 172, 181 [1996]). At the first stage, the party advancing the Batson challenge must make a prima facie showing that peremptory strikes were purposefully used to exclude members of a cognizable group — for instance, members of a particular race. If a prima facie case has been made out, at the second stage the burden shifts to the responding party to provide race-neutral reasons for its peremptory challenges. At the third stage, the burden of persuasion shifts back to the moving party, and the court determines whether the proffered race-neutral reasons were pretexts for discrimination (People v Smocum, 99 NY2d 418, 420-21 [2003]; Payne, 88 NY2d at 181).
Defendant's claims are clearly unpreserved. While the Batson rules [*11]ensure the protection of important rights, the ordinary rules of preservation apply to all Batson claims. Indeed, "any claim of improper discrimination in the selection of jurors must be specific and timely made" (People v James, 99 NY2d 264, 272 [2002]; see also People v Reyes, 274 AD2d 323, 323-324 [1st Dept 2000], lv denied 95 NY2d 870 [2000]).[FN1]
In particular, the preservation requirement applies to challenges to "the procedures by which the court disposed of [the] Batson application" (People v Jenkins, 302 AD2d 247, 248 [1st Dept 2003], lv denied 100 NY2d 583 [2003]).
Moreover, "[t]his Court has consistently declined review where a [d]efendant failed to preserve his current claim that the court did not follow the three-step Batson protocols in determining various claims of discriminatory exercise of peremptory challenges" (People v McLeod, 281 AD2d 325, 326 [1st Dept 2001], lv denied 96 NY2d 899 [2001] [internal quotation marks omitted]; see also People v Colon 187 AD3d 647, 649 [1st Dept 2020], lv denied 36 NY3d 1096 [2021]; People v Washington, 56 AD3d 258 [1st Dept 2008], lv denied 11 NY3d 931 [2009]).
Indeed, the majority concedes that defendant's claims are unpreserved. I see no reason to depart from this Court's well-settled precedent.
In my opinion, the record is clear that defendant failed to preserve its argument that the court failed to comply with the steps of a Batson challenge (see People v Colon 187 AD3d at 649). It is undisputed that the court improperly concluded that defendant's challenge was untimely (see People v Perez, 37 AD3d 152, 154 [1st Dept 2007]; People v Butler, 15 AD3d 415, 415 [2d Dept 2005], lv denied 4 NY3d 884 [2005]). Thus, it would have been better for the court to proceed with the first step of a Batson challenge by requiring defendant to make a prima facie showing that peremptory strikes were used in a discriminatory fashion, rather than focusing solely on the potential remedies. However, the record is clear that after the court concluded the issue was "moot" and discontinued any Batson procedures, defense counsel agreed to resume jury selection while "paying attention to the panel." Defendant bore the "burden to make a record," and the court did not "prevent[] him from doing so, either as to his procedural or substantive claims" (Colon, at 187 AD3d at 649).
The majority's reliance on People v Claudio (10 AD3d 531 [1st Dept 2004], lv denied 4 NY3d 829 [2005]) is misplaced. The facts in Claudio are wholly inapposite. This is not as stated by the majority, a "mischaracterization" or an "oversimplification" of the facts, but rather an almost verbatim recitation of the facts. In Claudio,
"[d]uring jury selection, the People exercised peremptory challenges to 6 of the first 12 prospective jurors, 2 of whom were Hispanic. When defense counsel called the court's attention 'as an alert' to a potential Batson issue, the court replied that the challenged jurors would not be excused at that point. The prosecutor [*12]stated that she was 'prepared' to address the issue. Thereafter, both the prosecutor and defense counsel continued questioning the panel, each exercising peremptory challenges to 19 prospective jurors. By this point, 10 jurors had been seated. No prospective jurors had been challenged for cause by either side.
The court then entertained challenges to the next two prospective jurors. Again, no challenges for cause were made. However, the People exercised a peremptory challenge against another Hispanic juror. At this point, defense counsel specifically raised a Batson challenge on the basis that the only three potential jurors of Hispanic origin were challenged by the prosecutor. Without addressing whether defense counsel had made a prima facie showing of discrimination, the court asked the prosecutor for an explanation of each challenged juror in question" (id. at 532-533).
The prosecution proceeded to give a race-neutral explanation. The court went on to state since the prosecutor "has struck all three Hispanics who have been in issue thus far, I am striking her challenge to Ms. Arroyo and setting [sic] Ms. Arroyo on the jury. As to the other two challenges I am not. I feel this is a fair exercise of attempting to avoid any kind of racially motivated peremptory challenge . . . I think this is a fair exercise of resolving the issue" (id. at 532 [internal quotation marks omitted]).
"[T]he court then went on to seat one challenged juror but not the other two without making any factual findings for its decision" (id. at 534). This Court found the "arbitrary procedure was clearly outside the Batson protocol and afford[ed] . . . no basis on which to determine whether the court found the prosecutor's explanation as to that juror to be pretextual or not" (id.). This is clearly not what occurred in this case. Here, the court did not curtail or refuse to entertain defendant's application. Nor did the court impose its own type of "Batson compromise" which was clearly improper.
The majority opinion is a clear divergence from well settled caselaw that the preservation requirement is not satisfied when a defendant lodges a complaint without requesting a remedy (see People v Rogelio, 79 NY2d 843, 844 [1992]; People v Rodriguez, 293 AD2d 336, 337 [1st Dept 2002], lv denied 98 NY2d 713 [2002]; see also People v Chodakowski, 162 AD3d 476, 476 [1st Dept 2018], lv denied 32 NY3d 936 [2018] [defendant's claim of juror misconduct unpreserved because defense counsel never specifically requested a new trial or hearing on the grounds he raised on appeal]). Nor can a defendant complain on appeal that he was not granted a particular remedy when he never asked the trial judge for that remedy (see People v Lombardo, 61 NY2d 97, 104 [1984]; People v Whitley, 14 AD3d 403, 405 [1st Dept 2005], lv denied 4 NY3d 892 [2005]).
Here, the record is clear that the court gave the defense multiple opportunities to state what remedies it was requesting. The court also offered [*13]the remedy of a mistrial. Indeed, counsel specifically stated that the defense was unsure of what the remedy would be, was not asking for a mistrial and was "fine" with the court paying attention to the panel "going forward."[FN2]
This Court has held that "[i]n the absence of a particularized objection to the adequacy of the remedial measures adopted by the court in response to the Batson issue . . . the issue is unpreserved for appellate review" (People v McLeod, 281 AD2d at 326). In McLeod, during jury selection, the court sua sponte noted that the prosecutor had challenged seven consecutive African American prospective jurors and asked the prosecutor to give his reasons for the challenges. "Defense counsel expressed his view that the proffered explanations were pretextual. Supreme Court allowed two of the peremptory challenges . . . but did not rule on the reasons given in support of the other five. The court directed that they remain as venirepersons, to be empaneled," and stated "if I see the pattern continuing, I will then make my own determination" (id. at 326 [internal quotation marks omitted]). The defendant raised no objection to this procedure. The prosecutor withdrew challenges to the last three prospective jurors, and defense counsel entered his own peremptory challenges to two of the three, resulting in the third juror duly empaneled. Defendant did not voice any objection to the procedures taken by the court. We held that the defendant failed to preserve a Batson challenge, as the defendant "acquiesced in the retention of the other two venirepersons to be seated as either jurors or alternates" and failed to assert a "particularized objection to the adequacy of the remedial measures adopted by the court in response to the Batson issue" (id. at 326).
The Second Department made a similar conclusion (see People v Williams, 260 AD2d 651, 651 [2d Dept 1999], lv denied 93 NY2d 1007 [1999] [Batson claim unpreserved because defense counsel did not object to court's proposed solution]; People v Steans, 174 AD2d 582, 583 [2d Dept 1991], lv denied 78 NY2d 1013 [1991] [Batson claim unpreserved where the defendant did not ask for mistrial or object to remedial action taken]; People v Rosado, 166 AD2d 544, 545 [2d Dept 1990], lv denied 77 NY2d 843 [1991] [Batson issue unpreserved where the defendant "noted a pattern of exclusion" but did not request a hearing, a ruling, or a mistrial]). People v Butler (15 AD3d at 415) is also illustrative. There, at the conclusion of a later round of jury selection, the defendant challenged the peremptory removal of two jurors in a prior round. The trial court determined that the defendant's application was untimely as the jurors could no longer be reseated. The Second Department noted that when a defendant raises a contemporaneous Batson challenge, the "appropriate remedy" is to seat the juror, but when a defendant delays raising a Batson challenge until "after the relevant jurors have been excused, the defendant [*14]limits the remedies available to the trial court" (id. at 415). The Court nonetheless found that because a Batson claim can be raised at any time during jury selection, the trial court was incorrect in finding that defendant's application was untimely. However, the Court further held that the defendant's appellate complaint that the judge should have declared a mistrial or granted him additional peremptory challenges was unpreserved, because the defendant never requested a mistrial or "any relief from the trial court" (id. at 415-416).
While defendant now contends that "[t]here were any number of remedies available for the court," the record is clear that defense counsel had sought only an opportunity to reseat the struck jurors, as she had believed the jurors "had two days of service, and they were still going to be here" after they were not selected. Once the court explained that the jurors had been excused and suggested a mistrial motion, defense counsel declined to make that application and stated she was not "asking for anything right now." After forfeiting the remedy of a mistrial, despite the court's repeated solicitation of remedial suggestions, defense counsel did not request additional peremptory challenges, propose that the People forfeit peremptory challenges, or apply for any other remedy. Given this, defendant has failed to preserve any argument that the court improperly precluded those forms of relief (see Lombardo, 61 NY2d at 104; Butler, 15 AD3d at 415-416).
In my opinion, the majority's assertion that the trial court effectively deprived defendant of a meaningful inquiry into the question of discrimination thereby giving rise to an "egregious" Batson violation is without merit. The majority correctly notes that "[t]he Batson procedure was created to prevent courts from becoming vehicles for discrimination. Since its enactment, courts have acted as arbiters of the law and procedure Batson put in place" (internal citations omitted). According to the majority, "the result here could be that defendant was denied the opportunity to have a fair jury seated simply because the trial court misapprehended [both the] Batson framework and the procedural posture in which such an inquiry can be made."
Putting aside for a moment the fact that counsel posed no objection to the court's conclusion that the issue was moot, counsel's "expressed desire for the [c]ourt not to issue a mistrial ruling," and that counsel stated that the defense was not requesting "any other relief," the fact remains that the court accepted defendant's Batson challenge. While not making a formal step-by-step determination, it specifically stated that based upon counsel's statements, it would consider the appropriate remedy proposed by counsel, including a mistrial.
The irony is that here the court acted as an arbiter to ensure the jury selection procedure was free from discrimination and that a fair jury was seated. Any error by the court in not making a formal step[*15]-by-step determination but rather soliciting an appropriate remedy from counsel, including a mistrial, was certainly harmless.
For the reasons stated, I would affirm the conviction.
Judgment, Supreme Court, New York County (Curtis Farber, J.), rendered April 3, 2019, held in abeyance and the matter remanded to Supreme Court for further proceedings as are necessary to satisfy the requirements of Batson v Kentucky.
Opinion by Pitt-Burke, J. All concur except Webber, J.P. and Scarpulla, J. who dissent in an Opinion by Webber, J.P. Webber, J.P., Moulton, Scarpulla, Rodriguez, Pitt-Burke, JJ.
THIS CONSTITUTES THE DECISION AND ORDER OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: January 21, 2025

Footnotes

Footnote 1: Though it is important for the steps of Batson to be applied sequentially, the Court of Appeals has created a small carve out for instances in which the nonmovant places their nonpretextual reasonings on the record (People v Hecker, 15 NY3d 625, 652 [2010], cert denied 563 US 947 [2011]). Under this "mootness doctrine," when these reasons are placed on the record the trial court's improper nonsequential application of the Batson steps are treated as moot (id.).

Footnote 2: In satisfying step one, a party "asserting a claim must show that the exercise of peremptory challenges by the prosecution removes one or more members of a cognizable racial group from the venire and that facts and other relevant circumstances support a finding that the use of these peremptory challenges excludes potential jurors because of their races" (Brown, 97 NY2d at 507).

Footnote 3: Watson and Julio are discussed above as demonstrations of this Courts use of interest of justice jurisdiction when trial courts deviate from the Batson procedure. We can draw parallels between the facts in Claudio and the instant appeal, as in Claudio the trial court interjected itself into the Batson process.

Footnote 4: The fourth peremptory strike was used on a Hispanic woman.

Footnote 1: Arguably, defendant's claim of improper discrimination in the selection process was unduly vague. Counsel simply stated that the People used four peremptory challenges for three African Americans and one for a woman who appeared to be Hispanic.

Footnote 2: Defendant's failure to object to the court's characterization that the issue was moot as well as defense counsel's statement that it was fine with the court "paying attention to the panel going forward" may be characterized as a withdrawal of his Batson application (see People v Moore, 123 AD3d 491 [1st Dept 2014], lv denied 25 NY3d 1168 [2015]; McLeod, 281 AD2d at 326).